## JOSEPH JAMES REGLE v. STATE OF MARYLAND

[No. 275, September Term, 1969.]

*Decided April 14, 1970.*

348

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Morris Topf* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, State's Attorney for Prince George's County,* and *Joseph C. Sauerwein, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

On September 28, 1968, Sergeant Frank Mazzone, a Maryland State Police officer working under cover, was advised by other police officers that Michael Isele, a police informer, had informed them that he had been invited by the appellant Regle to participate in a robbery. Mazzone immediately contacted Isele, whom he previously knew, and together they went to see the appellant. Isele introduced Mazzone to the appellant as a prospective participant in the planned robbery. After some dis-

cussion, the appellant invited Mazzone to participate in the robbery. While appellant did not then specify the place to be robbed, he indicated to Mazzone that Richard Fields had been involved with him in planning the robbery, and that he would also participate in the crime. Appellant, Mazzone, and Isele then met with Fields and the robbery plan was outlined by appellant and Fields. The need for guns was discussed and appellant and Fields spoke of the necessity of killing two employees at O'Donnell's restaurant, the situs of the proposed robbery. The four men then drove in Isele's car to appellant's home where appellant phoned Kent Chamblee for the purpose of purchasing a shotgun. Thereafter, the men drove to Chamblee's home, purchased the gun from him, and tested it in his presence. While Chamblee knew that the shotgun was to be used "for a job," he did not accompany the others when they then drove to the restaurant to perpetrate the robbery. Upon arriving there, Mazzone told appellant that he first wanted to "case" the restaurant. This being agreed, Mazzone and Isele went into the restaurant while appellant and Fields went to a nearby bar to await their return. Once inside the restaurant, Mazzone contacted police headquarters and requested assistance. Thereafter, he and Isele left the restaurant and rejoined appellant and Fields. While several police cars promptly responded to the scene, Mazzone found it necessary, in the interim, to reveal his identity as a police officer and to arrest appellant and Fields at gunpoint. At the same time he also arrested Isele in order "to cover him." After the arrest, appellant made an incriminating statement to the effect that he and Fields had planned the robbery and that he had invited Isele to participate in the crime.

Appellant, Fields, and Chamblee were thereafter jointly indicted for conspiracy to rob with a dangerous and deadly weapon and for carrying a deadly weapon openly with intent to injure. Appellant was separately tried by a jury, found guilty on both counts, and sentenced to twenty years on the conspiracy charge, and two years, concurrent, on the weapons offense.

The docket entries indicate that the conspiracy indictment against Chamblee was *nol prossed* prior to appellant's trial. It also appears that at his trial appellant established through the testimony of a police officer that Fields had been examined by State psychiatrists at the Clifton Perkins State Hospital and found "not guilty by reason of being insane at the time of the alleged crime." The State did not rebut the officer's testimony, although the record indicates that two of the State psychiatrists who had examined Fields were then present in court.

Against this background, appellant contends that since the indictment against Chamblee was *nol prossed,* only he and Fields were charged as conspirators; and that because Fields was found insane at the time of the commission of the crime and thus was not a person legally capable of engaging in a criminal conspiracy, his own conviction cannot stand since one person alone cannot be guilty of the crime of conspiracy.

Conspiracy — a common law misdemeanor in Maryland—is defined as a combination by two or more persons to accomplish a criminal or unlawful act, or to do a lawful act by criminal or unlawful means. *Jones v. State,* 8 Md. App. 370. The gist of the offense is the unlawful combination resulting from the agreement, rather than the mere agreement itself, and no overt act is required to constitute the crime. *Wilson v. State,* 8 Md. App. 653. In other words, as succinctly stated by the Supreme Court of New Jersey in *State v. Carbone,* 91 A. 2d 571, 574, the "gist of the offense of conspiracy lies, not in doing the act, nor effecting the purpose for which the conspiracy is formed, nor in attempting to do them, nor in inciting others to do them, but in the forming of the scheme or agreement between the parties." Concert in criminal purpose, it is said, is the salient factor in criminal conspiracy. Criminal conspiracy is a partnership in crime—"It is the coalition of manpower and human minds enhancing possibilities of achievement aimed at the objective that present a greater threat to society than does a lone offender." Clark and Marshall *Crimes*

(6th Edition) Section 9.00. In short, it is *the existence* of the conspiracy which creates the danger. *Dennis v. United States,* 341 U. S. 494, 511.

As one person cannot conspire or form a combination with himself, it is essential in proving the existence of a criminal conspiracy to show "the consent of two or more minds," *Bloomer v. State,* 48 Md. 521, 536, *viz.,* it must be shown that at least two persons had a meeting of the minds—a unity of design and purpose—to have an agreement. *Wilson v. State, supra; Jones v. State, supra.* A formal agreement need not, however, be established; it is sufficient if the minds of the parties meet understandingly, so as to bring about an intelligent and deliberate agreement to do the acts contemplated. Clark and Marshall, Section 9.03. As the crime of conspiracy is one requiring a specific intent, and necessarily involves at the least two guilty parties, the required criminal intent must exist in the minds of two or more parties to the conspiracy. Perkins on Criminal Law, pp. 537, 544; 16 Am.Jur.2d *Conspiracy,* Section 9; Wharton's Criminal Law and Procedure (Anderson Edition), Section 83; Clark and Marshall, Section 9.07 (footnote 11).

In view of these principles, it is the well settled general rule that one defendant in a prosecution for conspiracy cannot be convicted where all of his alleged coconspirators, be they one or more, have been acquitted or discharged under circumstances that amount to an acquittal. Hocheimer on Criminal Law (Second Edition) Section 290; Clark and Marshall, Section 9.07; Wharton's, Section 91; Perkins, p. 533. The validity of the general rule has been consistently recognized by the Court of Appeals. *See State v. Buchanan,* 5 H & J 317; *Bloomer v. State, supra; Hurwitz v. State,* 200 Md. 578. We recognized the rule in *Wilson v. State, supra* (footnote 9). The rationale underlying the rule appears clear: that it is illogical to acquit all but one of a purported partnership in crime; that acquittal of all persons with whom a defendant is alleged to have conspired is repugnant to the existence of the requisite corrupt agree-

ment; and that regardless of the criminal animus of the one defendant, there must be someone with whom he confected his corrupt agreement, and where all his alleged co-conspirators are not guilty, a like finding as to him must be made. See 91 A.L.R.2d, at p. 703. But "It is only where one is convicted and another or others are acquitted, resulting in a repugnancy upon the record, that the convicted conspirator may be discharged." *Berry v. State,* 173 N. E. 705 (Ind.), cited with approval in *Hurwitz v. State, supra.*

Generally speaking, it would appear that so long as the disposition of the case against a co-conspirator does not remove the basis for the charge of conspiracy, a single defendant may be prosecuted and convicted of the offense, even though for one reason or another his co-conspirator is either not tried or not convicted. See the exhaustive collection of cases at 72 A.L.R. 1180-1192 and 91 A.L.R.2d 700-733. Consistent with this rule, the authorities all agree that the death of one conspirator does not of itself prevent the conviction of the other, where the conspiracy between them is shown by the evidence. In *Hurwitz v. State, supra,* a case in which all but one of the conspirators were granted immunity from prosecution on a ground not inconsistent with their participation in the conspiracy, the court held that such grant of immunity was not equivalent to acquittal and would not require reversal of the conviction of the one remaining conspirator. The same rule has been applied where one of two conspirators enjoyed diplomatic immunity and therefore could not be prosecuted for the conspiracy. *Farnsworth v. Zerbst,* 98 F. 2d 541 (5th Cir.). In *Adams v. State,* 202 Md. 455, it was held that conviction of one defendant in a conspiracy case was proper despite failure to convict any of the other conspirators where it was alleged and shown that there were persons unknown to the prosecution with whom the convicted defendant had conspired. And while the cases are generally divided on the question whether the entry of a *nolle prosequi* as to one of two alleged conspirators compels an acquittal of

the remaining conspirator, the better reasoned view would appear to support the proposition that it does not, at least where the *nolle prosequi* was not entered without the co-conspirator's consent after the trial had begun (which then would have amounted to an acquittal and precluded reindictment). *See Greathouse v. State,* 5 Md. App. 675. In *Hurwitz,* it was held that the entry of a "stet" to a co-conspirator's indictment was not tantamount to an acquittal and did not compel the discharge of the only remaining conspirator.[1]

Some cases suggest that the rule that acquittal of all save one of the alleged conspirators results in the acquittal of all applies only to acquittals on the merits. *See Farnsworth v. Zerbst, supra.* Other cases—while recognizing that acquittals are not always tantamount to a declaration of innocence—nevertheless conclude that an acquittal is in effect a judicial determination, binding on the State, that the acquitted defendant was not a participant in a criminal conspiracy. *See United States v. Fox,* 130 F. 2d 56 (3rd Cir.) ; *State v. Smith,* 175 S. W. 392 (Ark.). The State urges that where the acquittal of one of the alleged conspirators is based solely on the fact that he was insane at the time of the crime, the remaining conspirator should nonetheless be held responsible for the offense. The State relies on *Jones v. State,* 19 So. 2d 81 (Ala.), a case in which the defendant, convicted of murder, maintained that the actual killing was done by his brother and that because his brother was insane at the time of the crime, and hence innocent of the offense, he (the defendant) must likewise be exonerated. The court, after characterizing the defendant as "a co-conspirator and an aider and abettor in the homicide," said (p. 83) :

> "* * * the insanity [of appellant's brother] would not exculpate the appellant if he conspired with the principal or aided or abetted

---

1. By the Maryland stet procedure, the prosecutor indicates that he does not choose *at that time* to further prosecute the indictment.

him in the killing of the deceased \* \* \*. If appellant so conspired or aided or abetted in the homicide, the mental irresponsibility of [his brother] could not be invoked to exonerate said appellant. One may or could use an insane person as the agent of destruction — or conspire with such person to accomplish the homicide — just as guiltily as with a person of sound mind. The fact, if true, that the co-conspirator or principal in the crime is not amenable to justice because of mental irresponsibility does not exempt the other from prosecution. *Pruitt v. State,* 91 Tex. Cr.R. 189, 237 S. W. 572; *People v. Armstrong,* 299 Ill. 349, 132 N. E. 547; *Conley v. People,* 170 Ill. 587, 48 N. E. 911; 22 C.J.S. *Criminal Law,* §§ 85, 101."

We think the cases relied upon by the *Jones* court to support its conclusion stand for the proposition that it is no defense to one who participates either as a principal or aider or abettor in the actual commission of the substantive criminal offense that the principal offender was insane at the time of the crime. The principle would appear similar to the rule that a co-conspirator may be convicted of any crime committed by any member of a conspiracy to do an illegal act if the act is done in furtherance of the purpose of the conspiracy. The conspiracy being established, the fact that the member who committed the crime was insane at the time would thus not exonerate the others from complicity in the commission of the substantive offense. *See State v. Alton,* 365 P. 2d 527 (Mont.).

We do not find these cases controlling of the primary question before us, namely, whether *under an indictment for conspiracy,* one conspirator may be convicted of the offense where the only other conspirator was shown to be insane at the time the agreement between them was concluded. Conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. One necessarily involves joint action; the other does

not. By its nature, conspiracy is a joint or group offense requiring a concert of free wills, and the union of the minds of at least two persons is a prerequisite to the commission of the offense. The essence of conspiracy is, therefore, a mental confederation involving at least two persons; the crime is indivisible in the sense that it requires more than one guilty person; and where the joint intent does not exist, the basis of the charge of conspiracy is necessarily swept away. *See Feder v. United States,* 257 F. 694 (2nd Cir.). In short, the guilt of both persons must concur to constitute that of either. It is upon this premise that the authorities all agree that if two persons are charged as conspirators and one is an entrapper, or merely feigns acquiescence in the criminal intent, there is no punishable conspiracy because there was no agreement on the part of the one to engage in a criminal conspiracy.[2] *Delaney v. State,* 51 S.W.2d 485 (Tenn.) ; *Woo Wai v. United States,* 223 F. 412 (9th Cir.) ; *State v. Dougherty,* 96 A. 56 (N.J.) ; *Solomon v. State,* 76 S.W.2d 331 (Tenn.) ; *Odneal v. State,* 34 S.W.2d 595 (Tex.). For like reasons, we hold that where only two persons are implicated in a conspiracy, and one is shown to have been insane at the time the agreement was concluded, and hence totally incapable of committing any crime, there is no punishable criminal conspiracy, the requisite joint criminal intent being absent.

The evidence in the record before us plainly shows that appellant and Fields planned to commit a robbery at O'Donnell's restaurant. There is some evidence in the record to suggest that Chamblee may also have been a conspirator, although the State made little effort at the trial to establish his involvement in the conspiracy. Since an insane person is mentally incapable of forming a criminal intent, *Bradford v. State,* 234 Md. 505, 514, it is clear that if Fields was actually insane at the time of the offense, he could not be found guilty of engaging in a crim-

---

2. This would not be true, however, if after elimination of the alleged entrapper, there are at least two other parties to the conspiracy.

inal conspiracy. It does not appear, however, that Fields was ever tried and acquitted of the conspiracy charge. But the only evidence in the record—the testimony of the police officer—is that Fields was found by State psychiatrists upon examination to have been insane at the time of the commission of the offense. While such testimony is hardly the equivalent of the expert medical evidence required to prove insanity, *see Millard v. State*, 8 Md. App. 419, the trial judge, in his charge to the jury, stated as a fact that Fields "was found to be insane." Assuming this to be the true situation, it is unlikely that Fields will ever be brought to trial on the conspiracy charge.

As to Chamblee, the docket entries indicate the entry of a *nolle prosequi* to his conspiracy indictment. We cannot ascertain, therefore, whether, in the circumstances in which it was entered, the *nolle prosequi* operated as an acquittal or not. *See Greathouse v. State, supra.* It appears, however, from colloquy between counsel and with the court that Chamblee was permitted to plead to a lesser offense than conspiracy, possibly with the understanding that he would not thereafter be charged with that offense.

In his advisory instructions to the jury, the trial judge, after fully defining the crime of conspiracy, stated that under Maryland law where only two parties are involved in the alleged conspiracy, and one is found not guilty, "the other could not be tried because one person cannot conspire except with another to commit a crime." He further advised the jury that there has to be "an outright finding of not guilty" but such was not the case with Fields who was merely found to be insane and for that reason not brought to trial. With reference to Chamblee, the trial judge instructed that he had not been found not guilty of conspiracy; that he did not believe that Chamblee had been prosecuted for that offense.

While appellant made no objection to the court's instructions, on the state of the record before us we think they constituted "plain error * * * material to the rights of the accused" under Maryland Rule 756 g. *See Parker*

*v. State,* 4 Md. App. 62. We thus deem it essential in the interest of justice that appellant's conspiracy conviction be reversed and that the State be afforded the opportunity to retry the case in light of the principles of law which we consider relevant and controlling. If, upon retrial, the State intends to charge only Fields and appellant as conspirators, and the evidence properly shows that Fields was legally insane at the time the agreement to perpetrate the robbery was concluded, then even though Fields has not been acquitted of the offense of conspiracy by a judicial determination that he was insane, nevertheless the requisite *joint* criminal intent being absent, appellant cannot properly be convicted of engaging with Fields in a criminal conspiracy. If Fields is shown so to be insane, but the facts show that the conspiracy indictment against Chamblee was not *nol prossed* under circumstances amounting to an acquittal (*see Greathouse v. State, supra*), then the State may undertake to adduce evidence showing that Chamblee was a conspirator, with appellant, in the plan to commit the robbery.

We also find plain error material to the rights of the accused in the court's instructions to the jury concerning the offense of carrying a deadly weapon openly with intent to injure. The court instructed the jury that the testimony showed that appellant carried the weapon "out on the street and wigwagged [it] at several people who went by" and that if they believed this testimony it would support a conviction. The record discloses that this incident occurred at 14th Street and Wallace Place in the District of Columbia, and not in Maryland. If this were the only evidence adduced at the trial to support a conviction for this offense, it is apparent that it would have been legally insufficient, there being no jurisdiction in Maryland courts to try offenses committed in the District of Columbia. *See Frasher v. State,* 8 Md. App. 439. As the State may be able to produce evidence that the offense of carrying the weapon *openly with intent to injure* was committed in Maryland, we think it should be afforded the opportunity to retry the appellant on this charge.

In view of our disposition of the case, we need not consider other questions raised by appellant, with one exception. By pretrial motion appellant indicated his intention to defend against the conspiracy charge on the theory that he had been entrapped by Isele, a police agent, into committing the offense. That the defense of entrapment is applicable in conspiracy cases is settled. *Hummelshime v. State*, 125 Md. 563. *See also Simmons v. State*, 8 Md. App. 355. Appellant sought, by discovery motion, to ascertain, among other things, the present address of Isele so that he could subpoena him as a witness for the defense. At the hearing on the motion, the appellant made it clear that he knew Isele's identity but not his present whereabouts. The prosecutor stated that he did not intend to call Isele as a witness (as was the State's prerogative, *Smith v. State*, 242 Md. 712), and therefore was not required by the Maryland Rules to furnish Isele's address. The court agreed with the State's position and told appellant that it was his responsibility to learn Isele's address.

The record discloses, however, that the prosecutor filed two petitions for writs of Habeas Corpus Ad Testificandum, alleging in the first petition that Isele was a federal prisoner detained in the penitentiary at Lewisburg, Pennsylvania, and, in the second petition, that he was incarcerated at the federal penitentiary in Danbury, Connecticut. In each petition, the State alleged that Isele was a material witness in appellant's case and sought to secure his attendance at the trial. We must assume that Isele's presence was not secured because, at the trial, the prosecutor expressed a lack of information concerning Isele, including, as we read the record, Isele's present whereabouts. In any event, the court denied appellant's motion, renewed at the trial, that the indictment be dismissed for failure of the State to reveal Isele's address.

Since appellant already knew Isele's identity, this is obviously not a case involving disclosure of the *identity* of an informer whose testimony was necessary and relevant to a fair defense. *See Nutter v. State*, 8 Md. App.

635; *Whittington v. State,* 8 Md. App. 676. But it seems strange to us that the State, in one breath, would tell the court that it did not intend to call Isele as a witness, and, in the next breath, undertake to secure his attendance as a witness while continuing to disavow knowledge of Isele's address. It may be that the State tried but was unable to locate Isele; if this were true, it may have been the wiser course had it so stated. On the other hand, the State is not affirmatively required to locate witnesses who may prove helpful to the accused. But if the State knows the whereabouts of such a witness, and intentionally, and without valid reason, fails to disclose it, it may quite unnecessarily be inviting the reversal of a conviction on constitutional grounds. See the unanimous opinion of the Supreme Court of California in *Eleazer v. Superior Court,* 464 P. 2d 42, 83 Cal.Rptr. 586.[3]

> *Judgments reversed; case remanded for a new trial.*

---

3. We do not here either adopt or reject the holding in this case.