593 A.2d 1117

Marie Delores APOSTOLEDES

v.

STATE of Maryland.

No. 111, Sept. Term, 1990.

Court of Appeals of Maryland.

Aug. 20, 1991.

Arcangelo M. Tuminelli (Phillip M. Sutley, both on brief), Baltimore, for petitioner, cross-respondent.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent, cross-petitioner.

Argued Before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., and WILLIAM H. McCULLOUGH, Judge of Seventh Judicial Circuit of Md., Specially Assigned.

CHASANOW, Judge.

On August 5, 1988, at his home in Dundalk, Maryland, Stephen Apostoledes (Mr. Apostoledes) was shot three times and died as the result of the gunshot wounds. Present in the Apostoledes home at the time of the shooting, in addition to the victim, was Mr. Apostoledes' wife, Marie Aposto-

ledes (Ms. Apostoledes), who is petitioner herein, as well as John Lacey (Lacey), who is the son of Ms. Apostoledes and stepson of Mr. Apostoledes.

Following the shooting, Lacey and Ms. Apostoledes were both charged with first degree murder and related counts. Lacey subsequently entered a plea of guilty to second degree murder and was sentenced to thirty years imprisonment.

Ms. Apostoledes was brought to trial on a four count indictment charging Count I—first degree murder including the lesser included offenses of second degree murder and manslaughter; Count II—conspiracy to commit murder; Count III—unlawful use of a handgun in the commission of a felony or crime of violence; and Count IV—accessory after the fact to murder.

One of the witnesses who testified at Ms. Apostoledes' trial was John Noah (Noah) who left the Apostoledes home just seconds before the murder. Noah testified that, when he left the house, Mr. Apostoledes was seated at a table, Ms. Apostoledes was by her bed which was close to the table, and Lacey had just walked into the house. About 15 to 20 seconds later, Noah heard two pinging sounds followed by a third such sound. Other evidence established that the victim had been shot twice in the head while sitting at the table and then shot a third time in the back of the head after he had fallen to the floor.

There was evidence presented that Ms. Apostoledes called 911 to summon assistance, but that the call was not made until approximately one hour after the shooting, and that she falsely told the 911 operator that the shooting had occurred only minutes before the call. The State introduced statements of John Lacey that he shot Mr. Apostoledes with Mr. Apostoledes' own gun. There was also testimony that Ms. Apostoledes had given several conflicting statements to police and to friends regarding where in the house she was at the moment the victim was shot. Robin Roberts, John Lacey's girlfriend, testified that she confronted Ms. Aposto-

ledes and said, "I know that you are involved as much as [Lacey] is." Ms. Apostoledes neither denied nor commented on the accusation. Roberts also testified that Lacey would not do anything without his mother's okay, and that she had heard Ms. Apostoledes say she did not love her husband and she wished he was dead.

At the conclusion of the State's case, Ms. Apostoledes' attorney moved for judgment of acquittal on all counts. As to the conspiracy count, he argued:

"Now, with respect to the conspiracy, there is absolutely no testimony, no evidence of any type that would indicate that Ms. Apostoledes talked to her son prior to the shooting. There has to be an agreement, a meeting of the minds that has some criminal act as the object of the conspiracy. There is no evidence of that. What there is evidence of is that she was there when the shooting occurred."

The court granted the motion and dismissed Count II—conspiracy to commit murder.

Ms. Apostoledes testified in her own defense. She testified that she was on the stairwell when she heard three shots. She returned to the first floor to find Mr. Apostoledes on the floor and Lacey with Mr. Apostoledes' gun in his hand. She also testified that, following the shooting, she hesitated to call the police because her son had asked her not to turn him in. Ms. Apostoledes explained that she did not seek medical help because she knew her husband, who was bleeding from the head, nose, eyes, and mouth, was dead; however, there was other evidence that she called a friend a few minutes prior to her call to 911 and indicated she could not tell if her husband was dead or alive.

At the close of all the evidence, Ms. Apostoledes again moved for judgment of acquittal on the three remaining counts. At that time the court granted the motion as to Count IV—accessory after the fact to murder. The jury was instructed on the substantive crimes and also on aiding and abetting. After approximately six hours of delibera-

tion, the jury advised that they could not reach a verdict on the two remaining counts and a mistrial was declared.

Prior to the second trial, Ms. Apostoledes filed a motion to dismiss the indictment on double jeopardy grounds. She argued that a second trial was barred by two forms of double jeopardy, former jeopardy/acquittal and collateral estoppel. She claims this is violative of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, which is made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). When her motion to dismiss was denied, she filed an immediate appeal to the Court of Special Appeals. That court ordered that all further proceedings be stayed until further order of the Court of Special Appeals. Six days before scheduled argument in the intermediate appellate court, the United States Supreme Court decided *Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). At oral argument, counsel argued that retrial was precluded on the two previously advanced double jeopardy grounds, as well as based on the authority of *Grady.* The Court of Special Appeals affirmed the lower court's denial of the motion to dismiss. *Apostoledes v. State,* 83 Md.App. 519, 575 A.2d 792 (1990). We granted certiorari to review the decision of the Court of Special Appeals.

## FORMER JEOPARDY/ACQUITTAL

Ms. Apostoledes' first contention is that she cannot be retried because a retrial would constitute a second trial for the "same offense" for which she was previously acquitted.

■ The gist of a conspiracy is an agreement between two persons to commit a crime. Its elements were summarized in *Townes v. State,* 314 Md. 71, 75, 548 A.2d 832, 834 (1988):

"We had occasion to outline the elements and characteristics of the crime of conspiracy in *Mason v. State,* 302 Md. 434, 444–45, 488 A.2d 955 (1985). A criminal conspir-

acy consists of the combination of two or more persons to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means. The essence of a criminal conspiracy is an unlawful agreement. The agreement need not be formal or spoken, provided there is a meeting of the minds reflecting a unity of purpose and design. In Maryland, the crime is complete when the unlawful agreement is reached, and no overt act in furtherance of the agreement need be shown."

In *Regle v. State*, 9 Md.App. 346, 350, 264 A.2d 119, 122 (1970), Chief Judge Murphy (now Chief Judge of this Court), writing for the Court of Special Appeals, quoted the Supreme Court of New Jersey from *State v. Carbone*, 10 N.J. 329, 91 A.2d 571, 574 (1952),

"the 'gist of the offense of conspiracy lies, not in doing the act, nor effecting the purpose for which the conspiracy is formed, nor in attempting to do them, *nor in inciting others to do them*, but in the forming of the scheme or agreement between the parties.' " (Emphasis added.)

 The crime of murder committed by a principal in the second degree does not require proof of an agreement between the defendant and another person in advance of the criminal act or even at the time of the act. Rather, it requires proof that the defendant was present and aided, counseled, commanded, or encouraged the commission of the murder. While aiding and abetting may be predicated upon counseling or encouraging, which in turn may be established by conversations sufficient to support a charge of conspiracy, that is not always the case. One might unilaterally but intentionally aid, counsel, or encourage another in the commission of a crime. A jury could find Ms. Apostoledes incited, ordered, induced, or encouraged the commission of the murder without having to find an agreement with Lacey.

As stated in 2 W. LaFave and A. Scott, Jr., *Substantive Criminal Law* § 6.8, at 156–57 (1986):

"A much simpler question is whether one must be guilty of engaging in a conspiracy with the principal in the first degree in order to be his accomplice. The answer is no, for while an agreement is an essential element of the crime of conspiracy, aid sufficient for accomplice liability may be given without any agreement between the parties. Indeed, it is even possible for A to encourage B to commit a crime so as to be liable as an accomplice without the facts also supporting the conclusion that A and B were co-conspirators." (Footnotes omitted.)

It is well settled that aiding and abetting does not always require a conspiracy and that they are not the same offense. As early as 1923, this Court stated in *Gilpin v. State*, 142 Md. 464, 468, 121 A. 354, 356 (1923) (quoting 16 C.J. 280), " 'neither an acquittal nor a conviction of a conspiracy to commit a crime is a bar to a prosecution for the commission of that crime or for aiding and abetting another to commit it.' "

 Finally we should point out that, in addition to contending that Ms. Apostoledes aided and abetted by counseling and encouraging Lacey, the State also contended that Ms. Apostoledes gave direct assistance toward the accomplishment of the murder. As the prosecutor argued, the jury could infer that Ms. Apostoledes took steps to ensure that her husband would die of his wounds by allowing him to languish, bleeding from three gunshot wounds to the head, for an hour prior to calling for medical assistance. Even absent an agreement with Lacey, Ms. Apostoledes may have encouraged or incited him to commit the murder or may have assisted him by deliberately waiting until Mr. Apostoledes was dead before summoning aid.

## COLLATERAL ESTOPPEL

 The collateral estoppel form of double jeopardy is not based on two offenses being the same, but on two criminal charges having a common necessary factual component. If the common necessary factual issue is found in

favor of the defendant in the first trial, the State may not relitigate the same factual issue in the second trial. If the fact is a necessary element in two offenses, a finding in favor of the defendant in the first trial on the issue requires an acquittal in the second trial. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Powers v. State*, 285 Md. 269, 401 A.2d 1031, *cert. denied*, 444 U.S. 937, 100 S.Ct. 288, 62 L.Ed.2d 197 (1979).

Ms. Apostoledes contends that the trial judge's grant of the motion for judgment of acquittal on the count charging conspiracy to commit murder collaterally estopped retrial on the murder and handgun counts. The trial judge did determine that there was insufficient evidence to prove a conspiratorial agreement between Ms. Apostoledes and Lacey. But for the reasons previously indicated, a conspiratorial agreement is not a necessary element of a conviction of murder based on aiding and abetting.

A collateral estoppel analysis focuses on what the fact finder did find or must have found. *See Ferrell v. State*, 318 Md. 235, 567 A.2d 937, *cert. denied*, —— U.S. ——, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990). When a defendant claims that a judge's acquittal on one count has collaterally estopped further prosecution of a related count, the reviewing court may examine the judge's express basis for the ruling in order to determine if the judge resolved in the defendant's favor an ultimate factual issue essential to both counts. *See State v. Anderson*, 320 Md. 17, 29–32, 575 A.2d 1227, 1233–34 (1990).

In the instant case, the trial judge stated that his grant of the motion on the conspiracy count was based on his finding that there was no evidence Ms. Apostoledes conspired with her son, Lacey, to commit the murder prior to its occurrence. In denying the motion for judgment of acquittal of the murder and handgun counts, he also stated that "[c]onspiracy is something that is formulated in advance. Just because an individual is not guilty of a conspir-

acy doesn't mean that the individual cannot be guilty of aiding and abetting."

Ms. Apostoledes cites the 1990 Connecticut decision of *State v. Hope,* 215 Conn. 570, 577 A.2d 1000 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991), for the proposition that the State is collaterally estopped to try a defendant on a murder charge after an acquittal on a charge of conspiracy to commit murder. In *Hope,* the State contended that a number of people entered into a plan to kill the victim. Hope was present during the murder, and the State alleged that he actively participated in the killing. In his first trial, Hope was charged with conspiracy to commit capital murder and the lesser offense of conspiracy to commit murder. Hope testified at his first trial that he was present with the others at the scene of the killing but went there, not with the intent to aid in the murder, but rather to persuade the co-defendants not to kill the victim. Hope was acquitted of both conspiracy counts and was subsequently charged with murder by aiding and abetting the co-defendants in the killing. The trial court denied Hope's motion to dismiss. He appealed, contending that the murder prosecution was collaterally estopped by the conspiracy acquittals.

The Supreme Court of Connecticut reversed and remanded the case with instructions to grant the motion to dismiss; however, the Connecticut court did not hold that a conspiratorial agreement was a necessary element of murder by aiding and abetting. Indeed, the court clearly expressed that, if the basis for the conspiracy acquittal was that no agreement was proven, then the defendant's contention of collateral estoppel would fail. The court concluded after a review of the evidence that the first jury must have accepted Hope's contention that he was there to urge the conspirators not to kill the victim and that he never had any intent to murder. It stated, "We conclude that the jury necessarily determined that the defendant lacked the specific intent that [the victim] be murdered." *Id.* 577 A.2d at 1008. Since the element of intent to murder was a necessary

element of the murder conviction, and since that intent was found not to exist in the first trial, the State could not prosecute Hope for murder. In the instant case, in contrast to *Hope*, we know that the conspiracy acquittal was based on failure to prove an agreement, not on the lack of intent to murder.

Ms. Apostoledes also relies on *Sealfon v. United States*, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948). In *Sealfon*, the defendant was tried before a jury for conspiracy to defraud the United States by presenting false invoices and making false representations to a ration board. He was acquitted. In a subsequent prosecution, Sealfon was tried for aiding and abetting the uttering and publishing of the same false invoices that had been introduced in the conspiracy trial. After recognizing that the conspiracy and the substantive crimes were not the "same offenses," the Supreme Court went on to hold that the second prosecution was still barred. The Court reviewed the evidence, the prosecution's theory, and the instructions given in the first trial and ascertained that, by its verdict, the jury must have found that Sealfon did not enter into any agreement with the alleged co-conspirator, Greenberg, to defraud the government. In the second trial the inference of an agreement with Greenberg was the only evidence supporting Sealfon's guilt of the substantive offenses. The Court said, "As we read the records of the two trials, petitioner could be convicted of either offense only on proof that he wrote the letter pursuant to an agreement with Greenberg. Under the evidence introduced, petitioner could have aided and abetted Greenberg in no other way." *Id.* at 580, 68 S.Ct. at 240, 92 L.Ed. at 185. In the instant case, the factfinder need not conclude Ms. Apostoledes agreed in advance with Lacey to commit the murder in order to prove she participated in the killing.

The doctrine of collateral estoppel requires a review unique to the facts of each case. *Wooten–Bey v. State*, 308 Md. 534, 544, 520 A.2d 1090, 1095, *cert. denied*, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 853 (1987). In the instant

case, a review of the facts presented at the first trial, as well as contentions of the parties and statements by the trial judge, convinces us that the acquittal on the conspiracy count was not based on the State's failure to prove any fact that would be an essential element of murder based on aiding and abetting.

## GRADY V. CORBIN

The final arrow from Ms. Apostoledes' quiver was hastily fashioned from the newest precept of double jeopardy, but it too misses the mark. Six days before this case was argued before the Court of Special Appeals, the United States Supreme Court decided *Grady v. Corbin*, — U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). As a result of that decision, Ms. Apostoledes added to her other arguments a contention that, based on *Grady*, the State is precluded from retrying her because to do so the State would have to prove conduct for which she was previously tried.

The defendant in *Grady* was driving while intoxicated when his automobile crossed the median and struck an oncoming vehicle causing the death of one person and the serious injury of another. He was initially charged with driving while intoxicated and failing to keep to the right of the median. He pleaded guilty to both charges and was sentenced. Two months later the case was presented to the grand jury, and the defendant was indicted for reckless manslaughter, second degree vehicular manslaughter, criminally negligent homicide, and third degree reckless assault. Through a bill of particulars, the State conceded that it would prove "the entirety of the conduct" for which the defendant was previously convicted—driving while intoxicated and failing to keep to the right of the median—in order to establish the elements of the new charges. The Supreme Court held:

"[T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will

prove conduct that constitutes an offense for which the defendant has already been prosecuted."

—— U.S. at ——, 110 S.Ct. at 2093, 109 L.Ed.2d at 564.

Nowhere in its opinion did the *Grady* Court suggest that the Double Jeopardy Clause protects against multiple trials when one or more counts are left unresolved following an initial trial due to jury deadlock, the grant of a new trial, or reversal on appeal.

Any doubt that the successive trial holding in *Grady* is ordinarily limited to instances where the State has failed to bring and join for trial all charges arising from a single episode is dispelled by the Court's concluding remarks:

"With adequate preparation and foresight, the State could have prosecuted Corbin for the offenses charged in the traffic tickets and the subsequent indictment in a single proceeding, thereby avoiding this double jeopardy question."

—— U.S. at ——, 110 S.Ct. at 2095, 109 L.Ed.2d at 566. In the instant case, the State did precisely what was urged in *Grady*. Therefore, the double jeopardy question at issue in *Grady* has been avoided.

Other courts have concluded that *Grady* is inapplicable in the context of a single prosecution where the State has simultaneously joined and proceeded to trial on all charges arising from a criminal episode. In *Detrich v. U.S.*, 924 F.2d 479 (2d Cir.1991), the Court of Appeals for the Second Circuit rejected an assertion that the State would have to surmount the *Grady* "same conduct" test before proceeding to retry a charge following appellate reversal.

Detrich was charged with importing heroin, possession of heroin with intent to distribute, and conspiracy to possess heroin. He was convicted of importation, but acquitted of conspiracy and possession. Following an appeal and reversal of the conviction for importation based on evidentiary error, Detrich attempted to block retrial based on his contention that, under *Grady*, his prior acquittals constituted an adjudication of the same conduct. The federal court

refused to engage in a substantive review of that issue, interpreting *Grady* as a "test to be used to determine when principles of double jeopardy are violated by successive separate prosecutions. [*Grady*] did not purport to make its new standard applicable to separate charges within a single prosecution." *Detrich*, 924 F.2d at 480. In so finding, the court relied upon the line of Supreme Court precedent holding that retrial following an appellate reversal based on a procedural error does not place a defendant twice in jeopardy [1] and the absence of any indication by the Court in *Grady* of its intent to disturb that distinct principle of double jeopardy law. *Id.* *See also U.S. v. Guariglia*, 757 F.Supp. 259, 265 n. 1 (S.D.N.Y.1991) ("To the extent [*Grady*] supplements the *Blockburger* test as applied to subsequent prosecutions, that change has no relevance here, where we deal with charges in a single indictment"). *Grady* does not remotely suggest that it was intended to disturb the principle permitting retrial following a mistrial. *Anderson v. State*, 570 So.2d 1101, 1102 n. 1 (Fla.Dist.Ct. App.1990).

Ms. Apostoledes' acquittal of conspiracy to murder does not preclude her retrial on the charges of murder and use of a handgun in the commission of a felony or crime of violence.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY PETITIONER.

McAULIFFE, Judge, concurring.

I concur in the result, and in the opinion of the Court except that portion dealing with the application of *Grady v. Corbin*, — U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). The Court concludes that the test articulated in *Grady* applies only to double jeopardy questions involved in

---

1. *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); *United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); *Ball v. United States*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

successive prosecutions, and not to those involved in multiple punishments arising out of a single prosecution. I am not willing to say that the Supreme Court has so limited the applicability of the *Grady* test, or if it has, that this Court will not apply the *Grady* test to the determination of multiple punishment cases as part of the double jeopardy protection afforded by the common law of this State.

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Grady, supra,* 110 S.Ct. at 2090; *Randall Book Corp. v. State,* 316 Md. 315, 323, 558 A.2d 715 (1989). The difficult question which consistently arises in the application of the Double Jeopardy Clause in all three areas of protection is the determination of what constitutes "the same offense." In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court held that

> the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Although the *Blockburger* case involved a question of multiple punishments, and not successive prosecutions, the *Blockburger* rule has been employed as a nonexclusive test in successive prosecution cases. *Grady* holds that the *Blockburger* test, when applied in its original form as a clinical comparison of elements of offenses, affords insufficient protection against successive prosecutions for the same offense. Depending upon one's interpretation of *Grady*, it either expanded the *Blockburger* test generally by requiring a practical consideration of conduct proven to establish elements of offenses, or it constructed a new test that is superimposed upon the *Blockburger* test in successive prosecution cases. In *Gianiny v. State,* 320 Md. 337, 341, 577 A.2d 795 (1990), this Court suggested that *Grady*

had "expanded" the *Blockburger* test. The holding of *Grady* is simply that the expanded, or new, test must be applied to successive prosecution cases. In *Grady*, the Court may have implied, but did not hold, that this test should not be applied in determining what is "same offense" for multiple punishment purposes.

The Double Jeopardy Clause and our common law of double jeopardy have their roots in very basic notions of essential fairness. It may be argued that there is little justification for having two offenses considered the same for one aspect of double jeopardy protection, but not the same for another aspect of the same basic protection. Application of the *Blockburger* test in its original form involves a rather sterile approach to the question of what constitutes the same offense. One simply lists in column A the elements required to prove one offense and in column B the elements required to prove the other offense. Then, considering only the elements and not the facts of the particular case, if each column contains an element that the other does not, the offenses are not the same. The *Grady* modification utilizes a case-oriented approach, adding as flesh to the bare bones of each essential element the conduct used to prove that element, and then comparing the lists of elements so defined.

In comparing the application of the basic *Blockburger* test with the application of that test enhanced by the *Grady* approach, consider the question of whether reckless driving and failing to drive to the right of center of a highway are the same offenses. Under the sterile *Blockburger* approach, they are not. Reckless driving requires proof of recklessness, which the other offense does not. Failing to keep to the right of center requires proof that the defendant drove on the wrong side of the road, but this conduct is not necessarily required to prove reckless driving. On the other hand, if the *Grady* approach is used, and if it is clear under the facts of a particular case that the State did, or must, rely on proof that the defendant drove on the wrong side of the road in order to prove reckless driving,

then the two offenses are the "same" for jeopardy purposes. It is still true that proof of reckless driving requires proof of an element, *i.e.*, recklessness, that the other offense does not. It is *not* true, however, that proof of failing to keep to the right of center requires proof of *any* element not also required to prove reckless driving, under the particular facts of this case.

The *Blockburger* test is satisfied only if *each* offense requires proof of an element that the other does not, and thus the test, when fleshed out by the particular conduct constituting the elements involved in the hypothetical case, is not satisfied. In effect, failing to drive to the right of center is, under the facts of the given case, a lesser included offense of reckless driving. It would seem unfair, in the absence of a demonstrated legislative intent to permit double punishment, to allow the defendant to be sentenced for the lesser included offense and then given a consecutive sentence for the greater offense.

The Supreme Court has not always taken a completely sterile approach to *Blockburger* in multiple punishment cases. In *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), the question was whether the defendant could be separately sentenced for the offense of felony murder and the underlying felony of rape that was used to prove the felony murder. The government argued that the felony murder statute proscribed the killing of another person in the course of committing rape, *or* robbery, *or* kidnapping, *or* arson, etc., and thus, employing the sterile approach of *Blockburger*, it was not in every instance necessary to prove rape in order to prove felony murder. The Supreme Court did not accept the argument, but looked instead to the particular circumstances of the case before it:

> *In the present case*, however, proof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from

other cases in which one criminal offense requires proof of every element of another offense.

*Id.* 445 U.S. at 694, 100 S.Ct. at 1439. (emphasis added).

We need not decide in this case whether the *Grady* gloss to the *Blockburger* test applies in multiple punishment cases. We need only assume, arguendo, that it does, and then conclude, for the reasons so well stated in the Court's opinion, that conspiracy and murder are not the same offense for purposes of jeopardy even when tested under the teachings of *Grady.* We would then be free to consider, when the issue is squarely presented, whether the *Grady* approach should be utilized to resolve multiple punishment jeopardy problems.