601 A.2d 142

STATE of Maryland

v.

Robert Ignatius GARNER, III.

No. 654, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Feb. 6, 1992.

**394**

David P. Kennedy, Asst. Atty. Gen., Baltimore (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Walter B. Dorsey, State's Atty. for St. Mary's County, Leonardtown, on the brief), for appellant.

No brief or appearance by appellee's counsel.

Argued before MOYLAN, BISHOP and FISCHER, JJ.

MOYLAN, Judge.

Even the expansive version of double jeopardy law promulgated by *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990),[1] was intended to be, at most, a

---

**1.** The future viability of *Grady v. Corbin* is in some doubt. It expanded significantly the breadth of the double jeopardy protection. It was decided by a five-to-four vote, over the strenuous and lengthy dissent of Justice Scalia, joined by Chief Justice Rehnquist and Justices O'Connor and Kennedy. Justice O'Connor filed a separate dissent. Two of the justices in the majority—Justices Brennan and Marshall— are no longer on the Court. The *Grady v. Corbin* majority opinion was authored by Justice Brennan. On October 7, 1991, the Supreme Court granted *certiorari,* at the request of the Solicitor General, in the

shield to protect a defendant from oppressively successive prosecutions by the State. It was never intended to be a sword with which a defendant could opportunistically manipulate or disrupt proper charges properly filed against him. The appellee, Robert Ignatius Garner, III, came tantalizingly close to such successful manipulation and/or disruption, however, when he received a ruling in the Circuit Court for St. Mary's County that charges against him for driving while intoxicated be dismissed on double jeopardy grounds. In an effort to thwart that manipulation and/or disruption, the State has taken the present appeal.

On August 26, 1990, the appellee was issued citations for five separate traffic offenses: 1) driving while intoxicated, 2) driving in violation of an alcohol restriction on his license, 3) reckless driving, 4) spinning wheels, and 5) failure to fasten properly his license plate. On September 6, the appellee, through counsel, entered a plea of not guilty on all charges in the District Court. On his motion, all five charges were consolidated for trial in the District Court on November 27. On that same day, the appellee filed in the District Court a prayer for a jury trial on the consolidated package of five offenses. Pursuant to Maryland Rule 4–301(b), the consolidated cases were transferred to the Circuit Court for St. Mary's County. Trial in the Circuit Court was scheduled for April 17, 1991.

The gravest of the charges—the most ardently to be avoided—was driving while intoxicated. The defense plan went operational on April 15, two days before the scheduled trial. The appellee sought deliberately to go in harm's way on a lesser jeopardy to avoid a greater jeopardy. The appellee attempted to pay into the District Court a $35 fine on the single traffic citation of driving in violation of an alcohol restriction on his license.

We do not hesitate to characterize this creatively clever gambit as opportunistic, for had the appellee earnestly

case of *United States v. Felix,* —— U.S. ——, 112 S.Ct. 47, 116 L.Ed.2d 25 (1991) to reconsider the effects of *Grady v. Corbin.*

desired to plead guilty simply out of genuine eleventh-hour remorse, that could have been done just as easily upon arraignment prior to trial two days later. It is to be further noted that the only traffic citation on which jeopardy was courted was the one that arguably involved the "same conduct," within the contemplation of *Grady v. Corbin*, as did the charge of driving while intoxicated. At the very outset of trial on April 17, moreover, the appellee was poised and ready with a motion to dismiss the driving while intoxicated charge on the grounds of double jeopardy according to *Grady v. Corbin* as applied in Maryland by *Gianiny v. State*, 320 Md. 337, 577 A.2d 795 (1990).

The April 17 hearing on the double jeopardy claim involved no presentation of evidence but only arguments by counsel. The circumstances as to how the appellee attempted to pay the fine were left completely vague. Defense counsel simply asserted that his client had paid the fine and rested his double jeopardy argument upon that conclusory assertion. Whether the remission of the fine was by mail or in person was not established. It appears that by one avenue or another the District Court clerk ultimately received the money and issued the appellee a receipt. Because of the jurisdictional problem we are about to discuss, however, the District Court was unable to credit the $35 against the citation. Accordingly, the District Court clerk wrote the appellee on April 25, offering either to return the money or to apply it to another unrelated citation, as the appellee might direct. The appellee never responded.

Based upon the assumption that the fine had been paid, the trial judge granted the motion to dismiss the driving while intoxicated charge on double jeopardy grounds. The State cries Foul. We hold that upon either of two independent grounds, the State is legitimately chagrined.

### The Absence of Initial Jeopardy

█ The first hurdle the appellee has failed to clear is that he cannot be in subsequent (or double) jeopardy until he has been in initial jeopardy. Under Md.Transp. Art.

§ 26–204(b), it is very easy for a defendant to enter into a state of jeopardy in the case of many designated traffic citations. Ordinarily, of course, jeopardy in more serious cases does not attach until the literal commencement of an actual trial—the swearing of the jury in a jury trial or the first offering of evidence in a court trial. Under the mass production conditions of the traffic courts, however, the attachment of jeopardy is far less formal.

▉ Section 26–204(a) provides that after having been issued a traffic citation, a person shall comply with the notice to appear contained in that citation. Subsection (b) goes on to provide, however, that a person may comply with the notice to appear 1) by appearing in person, 2) by appearing through counsel, or 3) by payment of the fine if the citation is an offense permitting that form of response. Any of the three may precipitate jeopardy when they lead to a conviction.

In *Gianiny v. State,* 320 Md. 337, 577 A.2d 795 (1990), Judge Bloom, specially assigned, pointed out for the Court of Appeals that when a fine is paid in this third fashion, the defendant stands convicted of the offense. Judge Bloom observed, at 320 Md. 346, 577 A.2d 795:

"The statutory laws of this State authorize one to appear in response to a traffic citation that provides for payment of a fine by paying the fine, with the clear understanding that *such payment will constitute a conviction.*

*… When one has been convicted and punished for a criminal offense, he has been in jeopardy."* (emphasis supplied).

▉ But for another impediment yet to be discussed, the defense strategy was well conceived. It was better in its conception, however, than it was in its timing. Even in this third and less formal modality, there is a precise moment when jeopardy attaches. When the payment of the fine is being made either in person or through counsel, jeopardy does not attach as the defendant or his agent walks into the door of the District Court building nor even

as they stand in line at the cashier's cage. If the payment is being made by mail, jeopardy attaches neither with the writing of the check nor with the placing of the check in an envelope nor with the posting of the envelope in the mailbox. Jeopardy attaches when the constructive docket entry is made by the District Court, crediting the payment of the fine against the traffic citation in question.

■ In this case, that moment never occurred. The District Court never did credit the payment against the citation for the reason that it had been divested of all authority to do so. Ironically, the divesting agent was the appellee himself. After the five traffic charges had been consolidated for trial at his request, the appellee, as was his right, filed a prayer for a jury trial. With the filing of that prayer, jurisdiction over the charges moved from the District Court to the Circuit Court. Md.Cts. & Jud.Proc.Code Ann. § 4–302(e)(1) (1974, 1989 Repl.Vol.) provides:

"The District Court is deprived of jurisdiction if a defendant is entitled to and demands a jury trial at any time prior to trial in the District Court."

Even the appellee acknowledges that the attachment of initial jeopardy on a lesser included charge is a necessary condition precedent to a later claim of double jeopardy on a greater inclusive charge. In this case, that initial jeopardy never occurred. By the time the appellee tendered payment of the fine to the District Court, the District Court no longer had any jurisdiction over the charge. The act of tendering payment, under the circumstances, was as devoid of legal significance as if such tender had been made to the District Court of Arkansas or to the State Racing Commission or to the local chapter of the American Red Cross. In terms of basking in lesser jeopardy, the window of opportunity had shut.

### Sequential Versus Parallel Jeopardy

Even if the appellee had succeeded in having himself found guilty of the arguably lesser included offense, how-

ever, that would still afford him no double jeopardy relief in the posture of this case.

Indispensable to any understanding of double jeopardy law is the appreciation that, both in origin and in essential character, a double jeopardy defense is not a defense upon the merits. *It is a defense in bar.* It applies in a sequential setting. Its purpose is to prevent the prosecution from instituting new proceedings following the termination, through a verdict of either guilty or not guilty, of earlier proceedings. It is interposed as a *plea in bar* to prevent the initiation of new and sequential jeopardy following the termination of an earlier jeopardy.

By sharp contrast, it is not designed to interfere with the continuation of simultaneous or parallel jeopardy. The termination of jeopardy on a single charge in a multi-charge setting has no immediate and cross-over effect on other counts in a multi-count indictment or on other indictments in a multi-indictment trial that are simultaneously proceeding along their own parallel tracks. As is true with any plea in bar (because of the very nature of that type of plea), the function of the double jeopardy defense is not to terminate an existing jeopardy but only to bar the attachment of a new jeopardy. The very possibility of confusion on this score might never have arisen if Sir William Blackstone had not, perhaps inadvertently, substituted the confusingly broad term "double jeopardy" for the original and clearer usage "former jeopardy."

In *Apostoledes v. State,* 323 Md. 456, 467–469, 593 A.2d 1117 (1991), Judge Chasanow captured this essential core of double jeopardy law. In that case, the trial judge granted the defendant's motion for a directed verdict at the end of the State's case on the charge of conspiracy to murder because the State had failed to produce legally sufficient evidence of such conspiracy. The trial proceeded on the murder count itself. As to that count, however, the jury could not reach a verdict and a mistrial was declared. The defendant attempted to interpose a double jeopardy bar to

her retrial on the murder charge, arguing three separate double jeopardy theories.

One of those theories was *Grady v. Corbin*'s prohibition on being placed in jeopardy a second time for the "same conduct." Rather than look to the merits of the claim, Judge Chasanow rejected it at the threshold, pointing out that the double jeopardy defense, whatever its merit might be in other contexts, did not apply in the procedural posture of that case:

"Nowhere in its opinion did the *Grady* Court suggest that the Double Jeopardy Clause protects against multiple trials when one or more counts are left unresolved following an initial trial due to jury deadlock, the grant of a new trial, or reversal on appeal.

Any doubt that the successive holding in *Grady* is ordinarily limited to instances where the State has failed to bring and join for trial all charges arising from a single episode is dispelled by the Court's concluding remarks:

'With adequate preparation and foresight, the State could have prosecuted Corbin for the offenses charged in the traffic tickets and the subsequent indictment in a single proceeding, thereby avoiding this double jeopardy question.'

495 U.S. at 524, 110 S.Ct. at 2095, 109 L.Ed.2d at 566. In the instant case, the State did precisely what was urged in *Grady*. Therefore, the double jeopardy question at issue in *Grady* has been *avoided*." (emphasis supplied).

323 Md. at 468, 593 A.2d 1117. Significantly, the Court of Appeals did not resolve that double jeopardy issue on its merits but held rather that the necessity even to look to the merits had been "avoided."

The *Apostoledes* opinion pointed to other courts that have agreed that the double jeopardy defense is "inapplicable in the context of a single prosecution where the State has simultaneously joined and proceeded to trial on all charges arising from a criminal episode." *Id.* It cited with approv-

al *Detrich v. United States,* 924 F.2d 479 (2d Cir.1991). In *Detrich,* the defendant had been convicted of importing heroin but acquitted of possession of heroin and of conspiracy to possess heroin. The conviction for importation was then reversed on an evidentiary error and remanded for new trial. The defendant attempted to interpose a double jeopardy bar under *Grady v. Corbin,* citing the prior acquittals. The Second Circuit declined even to look to the merits, holding instead that the defense was available only in cases of "successive separate prosecutions." Judge Chasanow summarized the Second Circuit's holding, at 323 Md. 468–469, 593 A.2d 1117:

> "The federal court refused to engage in a substantive review of that issue, interpreting *Grady* as a 'test to be used to determine when principles of double jeopardy are violated by successive separate prosecutions. [*Grady*] did not purport to make its new standard applicable to separate charges within a single prosecution.' " (citation omitted).

*See also United States v. Guariglia,* 757 F.Supp. 259, 265, n. 1 (S.D.N.Y.1991) ("To the extent [*Grady*] supplements the *Blockburger* test as applied to subsequent prosecutions, that change has no relevance here, where we deal with charges in a single indictment"). *But see Wright v. State,* 307 Md. 552, 560–578, 515 A.2d 1157 (1986).

*Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), shows that the Supreme Court is in complete accord with this basic understanding of the essential character of the double jeopardy defense. In that case, the defendant was charged in a single indictment with four related counts. Upon arraignment, the defendant offered guilty pleas to charges of involuntary manslaughter and grand theft but pleaded not guilty to charges of murder and aggravated robbery. Over the State's objection, the trial judge accepted the two guilty pleas. The defendant was thereby in jeopardy as to those charges. The defendant, however, had not yet been called to trial and thereby placed in jeopardy on the remaining charges. The defendant

sought to interpose a double jeopardy bar to the State's going forward with those remaining charges. The trial judge dismissed the remaining charges on double jeopardy grounds and the Supreme Court of Ohio affirmed.

The Supreme Court of the United States reversed. Dealing not with a *Grady v. Corbin* "same conduct" issue but with a *Blockburger v. United States* "same offense" issue, indistinguishable for applicability purposes, the Court agreed 1) that manslaughter and murder are the "same offense" and 2) that aggravated robbery and theft are the "same offense." Jeopardy on manslaughter and theft, therefore, would have barred successive prosecutions for murder and aggravated robbery. In the very different sequence of going forward with companion charges, however, a double jeopardy plea in bar was simply inapplicable:

"The grand jury returned a single indictment, and all four charges were embraced within a single prosecution. Respondent's argument is apparently based on the assumption that trial proceedings, like amoebae, are capable of being infinitely subdivided, so that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge just concluded. We have never held that, and decline to hold it now."

467 U.S. at 501, 104 S.Ct. at 2542. The Court explained, at 467 U.S. 501, at 104 S.Ct. 2542, why the salutary "principles of finality and prevention of prosecutorial overreaching" were not engaged when dealing with the simultaneous jeopardies of a multi-count indictment or multi-indictment prosecution:

"No interest of respondent protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment. Here respondent offered only to resolve part of the charges against him, while the State objected to disposing of any of the counts against respondent without a trial. Respondent has not been exposed to conviction on the charges to

which he pleaded not guilty, nor has the State had the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial."

In words very pertinent to the appellee's attempted guilty plea in this case, the Supreme Court concluded, at 467 U.S. 501–502, at 104 S.Ct. 2541–2542:

"The acceptance of a guilty plea to lesser included offenses while charges on the greater offenses remain pending, moreover, has none of the implications of an 'implied acquittal' which results from a verdict convicting a defendant on lesser included offenses rendered by a jury charged to consider both greater and lesser included offenses. There simply has been none of the governmental overreaching that double jeopardy is supposed to prevent. On the other hand, ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws." (citations omitted).

The essential difference between constitutionally forbidden successive prosecutions, on the one hand, and the patient wrapping up of a single prosecutorial effort whose constituent charges have along the way become fragmented, on the other hand, is illustrated by *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). *Jeffers,* indeed, actually involved sequential jeopardies, although it did not involve successive prosecutions.

In *Jeffers,* the grand jury had handed down, at the same time, two indictments charging the defendant with 1) conspiracy to distribute narcotics and 2) conducting a continuing criminal enterprise in concert with others. The conspiracy, as charged, was arguably a lesser included offense within the criminal enterprise charge. The government attempted to consolidate the two indictments for trial. The defendant successfully objected. Following his conviction for conspiracy, the defendant attempted to bar his subsequent trial for conducting a criminal enterprise on the

grounds that he had already been in jeopardy for the "same offense."

■ The Supreme Court disagreed, holding that although *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), ordinarily forbade successive jeopardies for the "same offense," there are recognized exceptions to the double jeopardy bar. The pertinent exception for the *Jeffers* case, as well as for the case now before us, is that wherein the defendant himself brings about the sequential nature of the jeopardies that would otherwise, in the normal course of events, have been simultaneous:

> "If the defendant expressly asks for separate trials on the greater and the lesser offenses, or, in connection with his opposition to trial together, fails to raise the issue that one offense might be a lesser included offense of the other, another exception to the *Brown* rule emerges."

432 U.S. at 152, 97 S.Ct. at 2216.

■ In the case now before us, the appellee was entitled to have all of the charges against him resolved in one proceeding. It was his own action, however, which, had it been successful, would have frustrated that end. As the *Jeffers* opinion observed, at 432 U.S. 152, at 97 S.Ct. 2216:

> "[A]lthough a defendant is normally entitled to have charges on a greater and a lesser offense resolved in one proceeding, there is no violation of the Double Jeopardy Clause when he elects to have the two offenses tried separately and persuades the trial court to honor his election." (footnote omitted).

Indeed, had the appellee been successful in his effort to plead guilty to the lesser traffic infraction, he would have been the agent responsible for bringing about the successive nature of the prosecutions. We would, in that event, have concluded as to him precisely what the Supreme Court, at 432 U.S. 154, at 97 S.Ct. 2217, concluded as to Jeffers:

> "[H]e was solely responsible for the successive prosecutions for the conspiracy offense and the continuing-criminal-enterprise offense. Under the circumstances, we hold

that his action deprived him of any right that he might have had against consecutive trials." (footnote omitted).

The case that is absolutely dispositive of the present one is the recent Court of Appeals decision in *Huff v. State*, 325 Md. 55, 599 A.2d 428 (1991). In *Huff*, the defendant successfully did what the appellee here unsuccessfully tried to do. In that case, a Maryland State Trooper, after investigating an accident, presented a single application for a statement of charges. The Commissioner in the District Court charged Huff with seven separate offenses. For administrative purposes, the seven charges were contained in two charging documents.

Seeking to exploit what he deemed to be the rich potential of *Grady v. Corbin* and *Gianiny v. State*, Huff, eleven days before his consolidated trial in the District Court, paid the preset fine on the negligent driving charge. He then asserted a double jeopardy bar to being brought to trial for 1) manslaughter by automobile and 2) homicide by motor vehicle while intoxicated, alleging that they involved proof of the "same conduct" for which he had already been in jeopardy on the negligent driving charge.

The Court of Appeals agreed that his payment of the preset fine for negligent driving, indeed, constituted a conviction. It further agreed that negligent driving was a lesser included offense within the greater offense of homicide by motor vehicle while intoxicated.[2] It nonetheless declined to give Huff the benefit of the double jeopardy clause. Judge Rodowsky, speaking for the Court, held:

> "[*Brown v. Ohio*] held that '[w]here the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in successive proceedings.'

---

**2.** The charge of manslaughter by automobile had in the interim been *nol prossed* by the State. Had it still been in the case, however, the present analysis would have applied to it as well.

In the matter before us the prosecution is not successive. Here there is but a single prosecution for multiple offenses. The application for a charging document was made for all of the charges at the same time. The charging documents and warrants were issued at the same time, and served at the same time. All of the charges were set for trial at the same time.

Consequently, Huff's double jeopardy argument fails ..." (citations omitted) (footnotes ommited).

So too does the appellee's. There is no double jeopardy bar to the State's moving forward to trial on all charges against him.

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.