605 A.2d 157

Eric Joseph MAUK

v.

STATE of Maryland.

No. 1957, Sept. Term, 1990.

Court of Special Appeals of Maryland.

April 29, 1992.

458

Emory E. Tamplin, Jr., Cambridge, for appellant.

Valerie Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Michael C. Maloney, State's Atty. for Dorchester County, Cambridge, on the brief), for appellee.

Argued before MOYLAN, ALPERT and MOTZ, JJ.

MOYLAN, Judge.

The appellant, Eric Joseph Mauk, poses for us a cleverly crafted and deceptively attractive but ultimately meritless double jeopardy issue. On September 20, 1990, he stood trial before a Dorchester County jury on a multi-count indictment. What is here pertinent is that 1) on Count 1,

charging the possession of marijuana with intent to distribute, there was a hung jury and 2) on Count 2, charging the simple possession of marijuana, the jury returned a verdict of guilty.[1] Judge Richard D. Warren declared a mistrial as to Count 1. On September 28, Judge Warren sentenced the appellant to a nine-month term of imprisonment for the possession of marijuana. The appellant has now served that sentence.

On October 11, the State set a new trial date of November 20 for the possession of marijuana with intent to distribute charge, as to which the mistrial had been declared on September 20 because of the hung jury. The appellant moved to have that charge dismissed on grounds of double jeopardy. Judge Warren denied the motion. This interlocutory appeal followed.[2]

The appellant claims that for the offense of simple possession, he has already been in jeopardy. He is right. He has not only been jeopardized, he has actually been convicted, sentenced, and punished for that offense. He further claims that simple "possession" and "possession with intent to distribute" are the same offense within the contemplation of double jeopardy law. Again, he is right. He finally claims that to retry him now for possession with intent to distribute would be, therefore, to place him twice in jeopardy for the same offense, which the Constitution forbids. That argument certainly sounds plausible—at first glance. We will try to take it apart and see where it goes wrong.

---

1. On a third count, charging possession of cocaine, the jury returned a verdict of not guilty. On a fourth count, charging possession of drug paraphernalia related to marijuana use, the jury verdict was guilty. On yet a fifth count, charging the possession of drug paraphernalia related to the use of cocaine, the State had entered a *nolle pros* before trial. The fortunes of these three counts have no bearing on the issue before us on this appeal.

2. Judge Warren ordered a stay in the circuit court proceedings pending the outcome of this appeal. *Neal v. State,* 272 Md. 323, 326, 322 A.2d 887 (1974); *Pulley v. State,* 287 Md. 406, 414–415, 412 A.2d 1244 (1980).

## *"The Same Offense"*

We agree with the appellant in his statement of his major premise. "Possession with intent to distribute" is, indeed, the greater, inclusive offense, subsuming within it simple "possession," which is a lesser, included offense. Under the circumstances, the two offenses qualify as manifestations of "the same offense" within the contemplation of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and *Morey v. Commonwealth,* 108 Mass. 433 (1871).

Every element of simple possession is also a constituent element of possession with intent to distribute. The more aggravated possession, however, includes the incremental *mens rea* of an intent to distribute, to wit, an additional element. By what is now a hornbook definition, since one of the offenses (simple possession) does not possess any independent element not shared by the other (possession with intent to distribute), the two offenses, albeit not identical, are treated as "the same offense." In his construction of his syllogism, the appellant is thus far absolutely on the mark.

## *What Does Being "The Same Offense" Portend?*

The problem with the appellant's syllogism is in his selection of a minor premise. Having identified the relationship between the greater offense and the lesser as one of being but separate manifestations of the "same offense," he wishes then to set forth the consequence that such a relationship must necessarily portend. His problem is that such a relationship does not necessarily and universally portend any fixed or single consequence. The relationship, rather, will produce different results in different situations.

In one, the relationship may be *influential,* with the fate of the first offense modifying and circumscribing what happens in the case of the second. In a second situational context, by contrast, the relationship will be *foreclosing* in its force, with the fate of the initial offense controlling

totally the fortunes of its sibling. In yet a third, however, the relationship will be *nugatory* in effect, with the fate of the first offense having no impact at all upon the outcome as to the second. The three very different situational contexts are those involving:

1. Multiple punishment,

2. Sequential jeopardy,

3. Continuing jeopardy.

The appellant's problem is that he points to an impact that would be legally and logically compelling in a context involving sequential jeopardy but he misapplies it to a very different context involving continuing jeopardy. His syllogism is a valid one and would be persuasive in an appropriate setting. It is, however, inapposite in the setting of this case. The appellant's argument is in the right pew but the wrong church.

It behooves us to consider more fully the possible applicability of the *Blockburger* test in each of the three situational contexts. By way of brief prelude, it will be found applicable to multiple punishment problems (generally speaking) as a rule of statutory construction. It will be found applicable to sequential jeopardy problems as a measuring rod for issues of actual constitutional dimension. It will be found inapplicable to continuing jeopardy problems, not through any fault of its own but for the larger reason that the double jeopardy protection itself is inapplicable.

### Multiple Punishment

■ A multiple punishment problem could conceivably arise in this case, although it has not yet done so. If the appellant is, upon his retrial, convicted of the possession of marijuana with the intent to distribute, he would face, under Article 27, § 286(b)(3), a maximum penalty of five years imprisonment plus a fine of $15,000. If the sentencing judge were to impose that maximum term of imprisonment, without giving credit for the nine-month sentence

already imposed and served for simple possession, the appellant would, indeed, have suffered the multiple punishment for the same offense forbidden by the *Blockburger* principle. The total sentence of five years and nine months for the two manifestations of "the same offense" would exceed by nine months the legislatively prescribed maximum penalty for such offense.

■ On the very day, June 23, 1969, that the Supreme Court in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), deemed the double jeopardy clause of the Fifth Amendment to be incorporated in the due process clause of the Fourteenth Amendment, thereby making it applicable to the states, it also decided *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *North Carolina v. Pearce* has ever since been universally accepted as having provided the classic statement of the multiple purposes served by the double jeopardy clause:

> "That guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. This last protection is what is necessarily implicated in any consideration of the question whether, in the imposition of sentence for the same offense after retrial, the Constitution requires that credit must be given for punishment already endured." (footnotes omitted).

395 U.S. at 717, 89 S.Ct. at 2076.[3]

In terms of that third purpose and assuming other double jeopardy purposes are not engaged, what *Brown v. Ohio,*

---

**3.** In cataloging the purposes of the double jeopardy protection, *North Carolina v. Pearce* was still conceiving of double jeopardy in its pure and unadulterated form. To describe the purposes of the double jeopardy clause today, however, would require expanding those purposes from three to five. This would be necessary to accommodate two interloping doctrines which were historically never considered aspects of double jeopardy law at all but were, during an expansionist

432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), had to say about the sentencing problem in the context of consecutive sentences imposed at a single trial applies with equal validity to the problem of consecutive sentences generally:

> "Where consecutive sentences are imposed at a single criminal trial, *the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization* by imposing multiple punishments for the same offense." (emphasis supplied).

There is a big methodological difference between fulfilling the first two expectations of the clause and fulfilling the third. When either of the first two constitutional protections described by *North Carolina v. Pearce* is involved, the double jeopardy shield is brought forth in its pristine and traditional shape, as *a plea in bar.* In that capacity, it is the present-day constitutional incarnation of the two common law pleas in bar of *autrefois acquit* (at an earlier time, he was acquitted) and *autrefois convict* (at an earlier time, he was convicted). In a classic sequential setting, the history of an earlier jeopardy, which had initially attached and then been suffered and finally been terminated by a verdict of either acquittal or conviction, is pleaded as an historic fact that should bar any subsequent attachment of a forbidden second jeopardy. This quintessential character of the double jeopardy defense as a *plea in bar* is what we sought to communicate in *State v. Garner,* 90 Md.App. 392, 399, 601 A.2d 142 (1992):

> "Indispensable to any understanding of double jeopardy law is the appreciation that, both in origin and in essential character, a double jeopardy defense is not a defense upon the merits. *It is a defense in bar.* It applies in a sequential setting. Its purpose is to prevent

---

frenzy, nonetheless brought into the double jeopardy fold and now wear the cloak of double jeopardy. The interloping doctrines are those involving retrial following mistrial, *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), and collateral estoppel, *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

the prosecution from instituting new proceedings following the termination, through a verdict of either guilty or not guilty, of earlier proceedings. It is interposed as a *plea in bar* to prevent the initiation of new and sequential jeopardy following the termination of an earlier jeopardy." (emphasis in original).

■ It is only when serving the third purpose, the avoidance of multiple punishment for the same offense, that the double jeopardy protection does not always appear as a plea in bar, as something interposed pretrial. Its utility in this third instance is not to bar the attachment of jeopardy *per se* but rather to bar the imposition of the forbidden punishment. It, therefore, need make its appearance only at the time of sentencing. Even in the service of this third purpose, of course, it is, in a sense, still a plea in bar. In its other guises, it bars a trial; in this third guise, it bars a sentence. The timeliness of the intervention, however, depends upon the thing that is sought to be barred.

■ Sometimes this bar against multiple punishment is constitutional. Sometimes, however, it is simply an occasion for statutory interpretation. The constitutional/nonconstitutional status of the defense turns upon the distinction between the "identical" offense and the "same" offense. The Fifth Amendment constitutionally bars multiple punishment for the identical offense. If a defendant has once been sentenced and then somehow becomes exposed to resentencing because, for instance, there has been a reconviction on retrial following an appellate reversal, the second sentence dare not ignore any earlier punishment suffered, lest it become unconstitutionally multiple. It was of this constitutional aspect of the multiple sentencing problem, involving the identical offense, that *North Carolina v. Pearce* spoke, at 395 U.S. 718, 89 S.Ct. 2077:

"We think it is clear that *this basic constitutional guarantee is violated* when punishment already exacted for an offense is not fully 'credited' in imposing sentence upon a new conviction for the same offense. *The consti-*

*tutional violation* is flagrantly apparent in a case involving the imposition of a maximum sentence after reconviction. Suppose, for example, in a jurisdiction where the maximum allowable sentence for larceny is 10 years' imprisonment, a man succeeds in getting his larceny conviction set aside after serving three years in prison. If, upon reconviction, he is given a 10–year sentence, then, quite clearly, he will have received multiple punishments for the same offense. For he will have been compelled to serve separate prison terms of three years and 10 years, although the maximum single punishment for the offense is 10 years' imprisonment. Though not so dramatically evident, the same principle obviously holds true whenever punishment already endured is not fully subtracted from any new sentence imposed." (emphasis supplied).

■ It is equally clear, however, that even in this constitutional manifestation of the multiple punishment problem, the fact that some punishment has already been imposed and suffered does not *ipso facto* bar further trial proceedings and resentencing. It simply requires that the second punishment take the first into account so that the combination of the two is not excessively multiple:

"We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that *punishment already exacted must be fully 'credited'* in imposing sentence upon a new conviction for the same offense." (footnote omitted) (emphasis supplied).

395 U.S. at 718–719, 89 S.Ct. at 2077.

Most of the time, however, the problem of multiple punishment, albeit closely resembling the constitutional issue, is an occasion calling for statutory interpretation.[4] With

---

**4.** *Whalen v. United States,* 445 U.S. 684, 688, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715, 721 (1980), explained:

"The Fifth Amendment guarantee against double jeopardy protects not only against a second trial for the same offense, but also 'against

the prodigious multiplication of closely-related, overlapping, and lesser included offenses in the criminal law, judicial intervention was inevitably sought to prevent the piling on of cumulative punishment. In this area, *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), has become the almost universally accepted guideline for statutory interpretation.

■■■ If two statutorily enacted crimes are *not* the "same offense" within the contemplation of *Blockburger,* it is presumed that the legislature intended that those separate crimes could, in the discretion of the sentencing court, be punished separately and cumulatively. That they are otherwise related matters not, so long as they are not the "same" according to the *Blockburger* test.[5] If, on the other hand, two non-identical crimes satisfy the *Blockburger* test for sameness, as with a lesser included offense within a greater, then the permissibility of separate and cumulative sentences depends upon a reading of legislative intent.[6]

---

multiple punishments for the same offense.' ... [T]he question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." (citation omitted).

**5.** *Whalen v. United States,* observed in this regard, at 445 U.S. 692, 100 S.Ct. 1438:
"'[S]ince Congress in enacting legislation rarely specifies its intent on this matter, the courts have long adhered to the rule that Congress *did* intend to permit consecutive sentences ... when each offense "'requires proof of a fact which the other does not.'"'" (emphasis supplied).
*Garrett v. United States,* 471 U.S. 773, 793, 105 S.Ct. 2407, 2419, 85 L.Ed.2d 764 (1985), was emphatic:
"The presumption when Congress creates two distinct offenses is that it intends to permit cumulative sentences, and legislative silence on this specific issue does not establish an ambiguity or rebut the presumption ..."
*See also Albernaz v. United States,* 450 U.S. 333, 341–342, 101 S.Ct. 1137, 1143–44, 67 L.Ed.2d 275 (1981).

**6.** This, of course, would not be the case if we were dealing with the identical offense. Although it is within the legislative prerogative in

 Legislative intent, if discernable, is always supreme. If the legislature clearly intended that punishments should not be cumulative, that is, of course, dispositive. If, on the other hand, the legislature clearly intended that the punishments may be cumulative, that is equally dispositive. If the legislative intent, however, is in doubt, then, under the so-called "Rule of Lenity," the courts must give the benefit of that doubt to the defendant. Stated more broadly (reducing three categories to two), the rule is that if two offenses are the "same" within the contemplation of *Blockburger*, cumulative sentencing is not permitted unless the legislature has signaled its intention that it is. *Whalen v. United States*, 445 U.S. 684, 693, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715, 724–725 (1980), states the rule to be:

"Accordingly, where two statutory offenses are not the same under the *Blockburger* test, the sentences imposed 'shall, unless the court expressly provides otherwise, run consecutively.' And where the offenses are the same under that test, cumulative sentences are not permitted, unless elsewhere specially authorized by Congress." (footnote omitted).

*See also Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). *Missouri v. Hunter*, 459 U.S. 359, 368–369, 103 S.Ct. 673, 679, 74 L.Ed.2d 535, 543–544 (1983), was equally emphatic that even two offenses which are the "same" under *Blockburger* may be punished cumulatively, if the legislature has clearly revealed its intention that that be the case:

"Our analysis and reasoning in *Whalen* and *Albernaz* lead inescapably to the conclusion that simply because two criminal statutes may be construed to proscribe the

---

the first instance to prescribe any penalty for any offense, save only that it not be "cruel and unusual" within the contemplation of the Eighth Amendment, the legislature may not authorize imposing the penalty upon a defendant more than once for the identical offense. Such a legislative act would constitutionally offend the double jeopardy clause. When dealing with offenses that are not identical, however, the legislative decision is supreme.

same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent. . . . *Legislatures, not courts, prescribe the scope of punishments.*

*Where, as here, a legislature specifically authorizes cumulative punishment* under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger, a court's task of statutory construction is at an end* and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." (footnote omitted) (emphasis supplied).

In the present case, as we have already discussed, the greater, inclusive crime of possession with intent to distribute and the lesser, included crime of simple possession are the "same offense" within the contemplation of *Blockburger*. The Maryland Legislature, moreover, has never remotely indicated that these offenses should be punished cumulatively. Neither, to be sure, has it indicated that they should not. Utilizing the Rule of Lenity to break the tie, therefore, we note that if upon retrial, reconviction, and resentencing, a cumulative punishment should be imposed,[7] it will be illegal. What is clear, however, is that no such cumulative sentencing has thus far come to pass and, notwithstanding the legitimacy of an impending retrial on the greater offense, may never come to pass. The issue of possible cumulative punishment is not yet ripe for review.

---

**7.** The criterion will be that described by *Missouri v. Hunter,* at 459 U.S. 366, 103 S.Ct. 678:

"[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."

*See also Garrett v. United States,* 471 U.S. 773, 793, 105 S.Ct. 2407, 2418–19, 85 L.Ed.2d 764 (1985).

■ The Supreme Court pronouncements on the subject make it clear that courts must not anticipate a multiple punishment problem. The mere possibility of multiple punishment will not bar a second trial or a second conviction. The very raising of a double jeopardy issue of the multiple punishment sub-variety must abide the second sentencing.

*Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), was a case where the defendant had already been in jeopardy (his pleas of guilty were accepted by the court) for manslaughter and grand theft and had been sentenced to terms of imprisonment for each of those offenses. The State, which had objected to the guilty pleas on two of the four counts in its indictment, sought to bring the defendant to trial on the remaining charges of murder and aggravated robbery. The trial court, the Ohio Court of Appeals, and the Ohio Supreme Court, in upholding the defendant's double jeopardy claim, deemed murder and robbery to be greater, inclusive offenses subsuming, respectively, the lesser, included offenses of manslaughter and theft. There were thus two sets of double manifestations of the "same offense."

One of the issues dealt with by the Supreme Court, as it reversed the Ohio decision, was whether subsequent punishment for murder and robbery, respectively, would be unconstitutionally cumulative in view of the punishments already exacted for the "same offenses," to wit, manslaughter and theft. Ohio had held that that possibility was enough to raise a double jeopardy bar to the very trials for murder and robbery. The Supreme Court explained that the multiple punishment prohibition is designed not to prohibit two sentencing procedures but simply to insure that the final sentencing combination not exceed the legislatively established maximum:

"In contrast to the double jeopardy protection against multiple trials, the final component of double jeopardy—protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Be-

cause the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent. But where a defendant is retried following conviction, the Clause's third protection ensures that after a subsequent conviction a defendant receives credit for time already served." (citations omitted) (footnote omitted).

467 U.S. at 499, 104 S.Ct. at 2540–41.

The Supreme Court concluded that the multiple punishment issue would not even arise until after convictions were obtained on the murder and robbery charges and sentencing took place for those crimes. Only then would the issue of whether the sentences exceeded the maximums intended by the Ohio Legislature be ripe for decision:

"We accept, as we must, the Ohio Supreme Court's determination that the Ohio Legislature did not intend cumulative punishment for the two pairs of crimes involved here. But before respondent can ever be punished for the offenses of murder and aggravated robbery he will first have to be found guilty of those offenses.... Presumably the trial court, in the event of a guilty verdict on the more serious offenses, will have to confront the question of cumulative punishments as a matter of state law, but because of that court's ruling preventing even the trial of the more serious offenses, that stage of the prosecution was never reached. While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution."

467 U.S. at 499–500, 104 S.Ct. at 2541.

*Ohio v. Johnson*, incidentally, makes it very clear that this type of multiple punishment problem, involving not an identical offense but only the "same offense," is not of constitutional dimension. As to whether the two sets of

crimes were, indeed, the same offense, the Supreme Court deferred to the judgment of the Ohio Supreme Court in that regard. 467 U.S. at 499, 104 S.Ct. at 2540. It further indicated that once the cumulative punishment issue was ripe for determination, it would be determined by the Ohio Supreme Court's discernment of the statutory intent of the Ohio Legislature.

*Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), is an interesting complement to *Ohio v. Johnson* because, as a federal prosecution, it involves the Supreme Court's reading of Congressional intent. The appellant had initially been convicted of conspiracy to distribute heroin and cocaine. He received a maximum sentence of 15 years imprisonment and a $25,000 fine. He was subsequently convicted of a Continuing Criminal Enterprise to violate the drug laws and received a maximum sentence of life imprisonment and a $100,000 fine. The Supreme Court treated the conspiracy charge as a lesser included offense within the Continuing Criminal Enterprise charge, concluding thereby that the two were the "same offense." Sequential trials were nonetheless permissible because it was the defendant himself who had objected to a trial joinder. The distinct issue of multiple punishment nonetheless loomed:

"Fines, of course, are treated in the same way as prison sentences for purposes of double jeopardy and multiple-punishment analysis. In this case, since petitioner received the maximum fine applicable to him under § 848, it is necessary to decide whether cumulative punishments are permissible for violations of §§ 846 and 848.

The critical inquiry is whether Congress intended to punish each statutory violation separately." (citation omitted).

432 U.S. at 155, 97 S.Ct. at 2218.

The Supreme Court concluded that Congress had intended that the two crimes should not be punished separately. Thus, although the subsequent trial for the greater, inclusive offense was not prohibited, the combined sentence for

the two convictions could not exceed the legislatively established maximum for the greater of the two. Separate sentences adding up to something larger than that provided for the greater of the two offenses would represent constitutionally forbidden multiple punishment for the "same offense." The cure, however, is simply to adjust the sentence downward so that it does not exceed the legislatively established maximum. The Supreme Court held, at 432 U.S. 157–158, 97 S.Ct. 2220:

> "Since the Government had the right to try petitioner on the § 848 indictment, the court had the power to sentence him to whatever penalty was authorized by that statute. It had no power, however, to impose on him a fine greater than the maximum permitted by § 848. Thus, if petitioner received a total of $125,000 in fines on the two convictions, as the record indicates, he is entitled to have the fine imposed at the second trial reduced so that the two fines together do not exceed $100,000." [8]

The trial court, therefore, must cross the multiple punishment bridge if and when it comes to it. By way of guidance, we simply admonish: Let a second sentencing take the first sentencing into account.

### *Sequential Jeopardy*

██ Looking beyond the specter of possible multiple punishment, the appellant unlimbers the actual plea in bar of *autrefois convict*. Since 1) possession with intent to distribute and 2) simple possession are the same offense, he reasons, the earlier jeopardy on the latter, terminating in a conviction, precludes a renewed jeopardy on the former.

---

**8.** It also observed that any question of whether life imprisonment plus 15 years exceeded the legislatively established maximum of life imprisonment for the greater offense was mooted by the fact that the defendant would not be eligible for parole in any event:

> "For present purposes, since petitioner is not eligible for parole at any time, there is no need to examine the Government's argument that the prison sentences do not present any possibility of cumulative punishment."

432 U.S. at 155 n. 24, 97 S.Ct. at 2218 n. 24.

His primary reliance is on *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The flaw in his reasoning is that that case arose in the situational context of sequential jeopardy, whereas the situational context wherein the appellant finds himself is that of continuing jeopardy.

In *Brown v. Ohio*, the defendant stole a car in Cleveland and drove it to Wickliffe, where he was arrested. He was charged in Wickliffe with operating a motor vehicle without the consent of the owner. He pleaded guilty and was sentenced to 30 days in jail and a $100 fine. Upon his release from jail, he returned to Cleveland. He was there indicted for automobile larceny. His plea in bar of double jeopardy was rejected and he was convicted and sentenced for the automobile larceny.

The Supreme Court of the United States reversed that conviction. In assessing whether the two crimes were the same offense, the Supreme Court deferred to the statutory interpretation made by the Ohio courts of the Ohio Legislature's intent. It accepted as a given Ohio's determination that the two crimes were, indeed, the same offense. From that launching platform, the issue became a constitutional one under the Fifth Amendment. The Supreme Court reasoned that whenever two crimes are the same offense so as to bar multiple punishment at a single trial, that relationship will also bar successive prosecutions:

> "If two offenses are the same under this test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of *barring successive prosecutions.* Where the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in *successive proceedings.*" (citations omitted) (emphasis supplied).

*Brown*, 432 U.S. at 166, 97 S.Ct. at 2226.

The critical sequence was that the defendant was initially in jeopardy for the lesser, included offense and that that jeopardy terminated with his conviction before the second

jeopardy for the greater, inclusive offense was even initiated.[9] The critical nature of the defense as one involving sequential jeopardies makes it clear that the earlier usage of "former jeopardy" is a much more apt shorthand for the protection than the current usage of "double jeopardy."[10] *See also Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) (where the initial jeopardy for failure to reduce speed had terminated before the subsequent jeopardy for involuntary manslaughter began); *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (where the initial jeopardy for felony-murder had terminated before the subsequent jeopardy for the predicate felony of robbery began).

The defendant also relies upon the Court of Appeals decision in *Gianiny v. State,* 320 Md. 337, 577 A.2d 795 (1990). That, however, was also a case of sequential jeopardy, where the initial jeopardy for negligent driving was terminated by the payment of a $45.00 fine before the subsequent prosecution for automobile manslaughter had even been initiated.

Were the appellant in the same situational context as that prevailing in the cases he relies upon, his argument would be well taken. Had he been tried and convicted for simple

---

**9.** The fact that in *Brown v. Ohio* the jeopardy for the lesser offense preceded the jeopardy for the greater offense is of no significance. The sequence could be reversed with no change of result.

"Although in this formulation the conviction of the greater precedes the conviction of the lesser [referring to *In Re Nielsen,* 131 U.S. 176, 188, 9 S.Ct. 672 [676], 33 L.Ed. 118 (1889)], the opinion makes it clear that the sequence is immaterial.... Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." (citations omitted).

432 U.S. at 168–169, 97 S.Ct. at 2227.

**10.** It was of this we spoke in *State v. Garner,* 90 Md.App. 392, 399, 601 A.2d 142 (1992):

"The very possibility of confusion on this score might never have arisen if Sir William Blackstone had not, perhaps inadvertently, substituted the confusingly broad term 'double jeopardy' for the original and clearer usage 'former jeopardy.'"

possession alone before ever going to the trial table on the charge of possession with intent to distribute, that later prosecution would be constitutionally barred by a plea of former conviction. That, however, was not the sequence of jeopardies here.

It is undisputed that the appellant's jeopardy for simple possession both began and ended on September 20, 1990. The critical question is that of what is the date or dates on which one or more jeopardies for possession with intent to distribute began or will begin?

### Continuing Jeopardy

The appellant's Waterloo is that there has been and still is only one jeopardy with respect to the charge of possession with intent to distribute. That is the jeopardy that began on September 20, 1990, simultaneously with the jeopardy for simple possession. The jeopardies for both began in the instant the jury was sworn in that case. Although the jeopardy on the simple possession charge terminated when the jury returned its verdict of guilty, the parallel jeopardy on the charge of possession with intent to distribute has, albeit interrupted in its course, never been terminated but continues unabated to this very day. When the appellant's retrial on that charge, necessitated by the earlier declaration of mistrial because of the hung jury, commences, therefore, it will not launch a new and subsequent jeopardy. The original and continuing jeopardy still abides.

In the context of a multi-count indictment or a multi-indictment trial involving related offenses, multiple jeopardies for different manifestations of the "same offense" routinely begin simultaneously and run along parallel tracks. Clearly, no double jeopardy problem is involved. In a multi-count indictment for armed robbery, for instance, simultaneously jeopardies will be suffered for 1) armed robbery, 2) simple robbery, 3) theft, and 4) assault and battery. In a literal sense, this involves not simply double jeopardy or even triple jeopardy but quadruple jeopardy for the "same offense," except that that is not the way we

count. The reason there is no impediment to these apparently multiple parallel jeopardies is that "double jeopardy" essentially means "former jeopardy" and is primarily concerned, therefore, with regulating subsequent and sequential jeopardies. In the fundamentally different environment of simultaneous jeopardy, its only concern is with the avoidance of multiple punishment and that is a concern that is not addressed until the time for sentencing.

While these routinely simultaneous jeopardies are legitimately proceeding along their parallel tracks, the termination of jeopardy on one or more of the tracks—through the declaration of a mistrial, the entry of a *nol pros*, the granting of a directed verdict of acquittal, the rendering of a verdict of acquittal, the rendering of a verdict of conviction, etc.—has no carry-over effect on the other jeopardies still proceeding along their own tracks. Double jeopardy, limited as it is to a plea in bar, cannot be interposed to bar the attachment of jeopardy that has already attached. As a plea in bar, it simply comes too late. The attachment of jeopardy is already a *fait accompli*. By its very nature, moreover, it has no utility as a plea upon the merits. It was of this quintessential nature of double jeopardy that we spoke in *State v. Garner,* 90 Md.App. 392, 399, 601 A.2d 142 (1992):

> "By sharp contrast, it is not designed to interfere with the continuation of simultaneous or parallel jeopardy. The termination of jeopardy on a single charge in a multicharge setting has no immediate and cross-over effect on other counts in a multi-count indictment or on other indictments in a multi-indictment trial that are simultaneously proceeding along their own parallel tracks. As is true with any plea in bar (because of the very nature of that type of plea), *the function of the double jeopardy defense is not to terminate an existing jeopardy but only to bar the attachment of a new jeopardy."* (emphasis supplied).

However long its life may be, the continuing original jeopardy for possession with intent to distribute will not be

at all affected, under double jeopardy principles at least, by the fates of its doctrinal litter-mates, whose jeopardies began simultaneously with its own. What was said in Gilbert & Moylan, *Criminal Practice and Procedure* § 37.6, at 440 (1983), with respect to the intra-trial context is equally applicable to the situation now before us:

> "Even after trial has begun and jeopardy has attached on a multi-count indictment or upon multiple indictments, the striking out of one count because it is duplicitous does not prevent the trial from continuing on an identical count (no longer duplicitous when it stands alone). Even after trial has begun and jeopardy has attached, a directed verdict of acquittal on a greater inclusive offense, such as assault with intent to murder, will not prevent the trial from continuing on a lesser included offense, such as simple assault, even though the two offenses qualify as 'the same offense' within the contemplation of the double jeopardy law.[11] Some of the dangerously universal language, uttered in the distinct context of former jeopardy situations, about the termination of the first jeopardy precluding a second jeopardy can give rise to false, but difficult to handle, contentions in situations such as these. It is why the language from the former jeopardy cases should be pinned down specifically to the former jeopardy context and not allowed to roam dangerously abroad in the generic label of undifferentiated 'double jeopardy.'"

*See also Bynum v. State,* 277 Md. 703, 357 A.2d 339 (1976) *cert. denied,* 429 U.S. 899, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976).

---

**11.** A *properly granted* judgment of acquittal on simple assault, to be sure, might well compel the granting of a similar judgment of acquittal on assault with intent to murder. That, however, would not be because of any double jeopardy consideration but for the very different reason that a properly granted judgment of acquittal on the lesser charge would establish, by definition, that the evidence was legally insufficient to permit going forward on the greater charge. The point is that although it may be an issue, it is *not* a double jeopardy issue.

Similarly applicable, although uttered in the same intra-trial context, is our observation in *Ball v. State*, 57 Md.App. 338, 374–375, 470 A.2d 361 (1984):

"Neither double jeopardy, nor any other plea in bar, is interposed as a defense in the middle of an ongoing trial.... A judgment of acquittal on first-degree murder does not keep the trial from going forward on the issues of second-degree murder or manslaughter, even though all three are for some purposes 'the same offense.' Anticipating the possibility of inconsistent verdicts, the defense attorney may not insist that the jury render the acquittals first, so that he may immediately interpose a double jeopardy challenge to any subsequent rendering of convictions on charges that might arguably be 'the same offense.' This intra-trial time sequence is simply not the context to which double jeopardy law applies."

The double jeopardy protection, by its very nature, does not terminate existing jeopardy. It only bars the attachment of new jeopardy.

How, then, shall we conceptualize a retrial following 1) the appellate reversal of an earlier conviction, 2) the granting by the trial judge of a motion for new trial following conviction, or 3) the declaration of a mistrial either at the request of the defendant or when dictated by manifest necessity? Did those legal events kill off the original jeopardy so that a retrial will entail new jeopardy? Or was the original jeopardy only suspended by those judicial interruptions and may now resume its continuing life? Is a retrial the beginning of a new jeopardy or a continuation of the old? This small but perplexing philosophical problem bedeviled the Supreme Court for almost seven decades. *United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896); *Kepner v. United States*, 195 U.S. 100, 134–137, 24 S.Ct. 797, 806–808, 49 L.Ed. 114 (1904) (dissenting opinion by Holmes, J.); *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964).

The problem that had plagued the Supreme Court of how to categorize the jeopardy implications of a retrial was

resolved by *Price v. Georgia,* 398 U.S. 323, 326–329, 90 S.Ct. 1757, 1759–1761, 26 L.Ed.2d 300 (1970). It conceptualized the appellate reversal—retrial sequence as one involving continuing jeopardy. "The concept of continuing jeopardy implicit in the *Ball* case would allow petitioner's retrial for voluntary manslaughter after his first conviction for that offense had been reversed." 398 U.S. at 329, 90 S.Ct. at 1761. *See also Breed v. Jones,* 421 U.S. 519, 533–534, 95 S.Ct. 1779, 1787–1788, 44 L.Ed.2d 346 (1975); *Jeffers v. United States,* 432 U.S. 137, 152, 97 S.Ct. 2207, 2217, 53 L.Ed.2d 168 (1977) ("Thus, for example, in the case of a retrial after a successful appeal from a conviction, the concept of continuing jeopardy on the offense for which the defendant was convicted applies, thereby making retrial on that offense permissible."); *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 308, 104 S.Ct. 1805, 1813, 80 L.Ed.2d 311 (1984) (citation omitted). ("[I]mplicit in the *Ball* rule permitting retrial after reversal of a conviction is the concept of 'continuing jeopardy.' That principle 'has application where criminal proceedings against an accused have not run their full course.'"). *And see United States v. Wilson,* 420 U.S. 332, 344, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975) ("[W]here there is no threat of either multiple punishment or successive prosecutions the Double Jeopardy Clause is not offended.").

*Richardson v. United States,* 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), is particularly apposite to the situation before us. In the District Court for the District of Columbia, the defendant was on trial for three counts of violating the federal narcotics laws. The jury acquitted him of one count but was unable to reach a verdict on the remaining two counts. The trial judge declared a mistrial as to those counts. The appellant attempted to raise a double jeopardy bar to his retrial on those counts, claiming that the evidence of guilt was legally insufficient under *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

The Supreme Court, speaking through Justice Rehnquist, found it unnecessary even to address the double jeopardy merits under *Burks* because the impending retrial did not pose a sequence yet ripe for double jeopardy consideration. The Supreme Court held that, following the mistrial, the original jeopardy continued and never terminated so as to give rise even to the possibility of double jeopardy. Single jeopardy must end before double jeopardy is even possible. The Supreme Court held, at 468 U.S. 325, 104 S.Ct. 3086:

"[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy. Since jeopardy attached here when the jury was sworn, petitioner's argument necessarily assumes that the judicial declaration of a mistrial was an event which terminated jeopardy in his case and which allowed him to assert a valid claim of double jeopardy.

... [W]e hold ... that *the failure of the jury to reach a verdict is not an event which terminates jeopardy.*" (citations omitted) (emphasis supplied).

The first jeopardy never having terminated, the very concept of second jeopardy does not arise:

"[W]e reaffirm the proposition that *a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy* to which petitioner was subjected. The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and *jeopardy does not terminate when the jury is discharged because it is unable to agree.*" (emphasis supplied).

468 U.S. at 326, 104 S.Ct. at 3086.

In *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), the acceptance of two guilty pleas, over the State's objection, to lesser, included offenses (manslaughter and theft) was held to be no bar to the subsequent prosecution of the two respective greater, inclusive offenses (murder and robbery). The termination of jeopardy on each lesser, included offense did not impact adversely

on the continuing jeopardy as to each greater, inclusive offense. In this context, moreover, it is significant that in calculating whether several jeopardies are simultaneous or sequential, the triggering mechanism for attachment is not the swearing of the jury or the taking of evidence (in a court trial) but, rather, the return of the charging document: [12]

---

**12.** In determining when two or more jeopardies are successive rather than simultaneous, the Court of Appeals adopted *Ohio v. Johnson's* measuring rod in *Huff v. State*, 325 Md. 55, 599 A.2d 428 (1991), and *Schrimsher v. State*, 325 Md. 88, 599 A.2d 444 (1991). In those two cases, as in *Ohio v. Johnson*, a single charging document consisted of multiple charges. In those two cases, as in *Ohio v. Johnson*, guilty pleas on several lesser charges technically both engaged jeopardy and terminated jeopardy before the greater charges actually got to the trial table. A literal reading of earlier case law as to when, in the course of a prosecution, jeopardy attaches (the swearing of the jury or the offering of evidence) would seem to have suggested that the second jeopardies were, indeed, "successive," in the sense that they *began* after the others had *ended*. *See Crist v. Bretz*, 437 U.S. 28, 35–36, 98 S.Ct. 2156, 2160–2161, 57 L.Ed.2d 24, 31 (1978); *Blondes v. State*, 273 Md. 435, 443–447, 330 A.2d 169 (1975). Following the lead of the Supreme Court in *Ohio v. Johnson*, however, the Court of Appeals held that the filing of the charging document, was, under these circumstances, the triggering mechanism. In *Huff v. State*, Judge Rodowsky observed, at 325 Md. 75–76, 599 A.2d 428:

> "In the matter before us *the prosecution is not successive.* Here there is but a single prosecution for multiple offenses. The application for a charging document was made for all of the charges at the same time. *The charging documents* and warrants *were issued at the same time,* and served at the same time. *All of the charges were set for trial at the same time.*
>
> Consequently, Huff's double jeopardy argument fails in the face of *Ohio v. Johnson* ..." (footnote omitted) (emphasis supplied).

*See also Schrimsher v. State*, at 325 Md. 91, 599 A.2d 444.

Although it might be argued that the critical factor in *Ohio v. Johnson* was that the State was making a *bona fide* effort to bring all of the charges to trial at the same time and that the defendant's disruption of that orderly procedure, *over the State's objection,* effectively estopped the defendant from seeking to exploit the very disruption of sequence he had caused, the Court of Appeals unequivocally eschewed reliance on that notion of estoppel. *Huff v. State* observed, at 325 Md. 76, 599 A.2d 428:

> "Huff seeks to distinguish *Ohio v. Johnson* on the ground that, here, the State did not object to the prepayment of the negligent driving fine, and the State did not prevent prepayment by nolle prossing that charge before Huff paid the present fine. *The opposi-*

"The grand jury returned a single indictment, and all four charges were embraced within a single prosecution. Respondent's argument is apparently based on the assumption that trial proceedings, like amoebae, are capable of being infinitely subdivided, so that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge just concluded. We have never held that, and decline it now."

467 U.S. at 501, 104 S.Ct. at 2541–2542.

Contrasting its configuration of jeopardies with the sequential configuration that had obtained in *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the Supreme Court concluded that no double jeopardy interests were implicated by the case then before it:

"We do not believe, however, that the principles of finality and prevention of prosecutorial overreaching applied in *Brown* reach this case. No interest of respondent protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment."

467 U.S. at 501, 104 S.Ct. at 2542.

*Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), was decided on the same day as *Brown v. Ohio, supra.* It held that *Brown*'s prohibition on sequential jeopardy did not apply to the continuing jeopardy of a

---

tion of the state, however, to the guilty plea in *Ohio v. Johnson was coincidental,* and not critical, to the Court's rationale ..." (emphasis supplied).

It may very well be that some estoppel principle is still at work in preventing a defendant from asserting a double jeopardy claim in such circumstances. It may simply be the case that the *affirmative action of the defendant* in disrupting the orderly trial sequence is *alone* enough to estop him from exploiting that disruption and that it is, therefore, immaterial whether the State objected or not. A very different result might obtain, on the other hand, if it should be the State that is responsible for the sequential nature of the jeopardies. *See Apostoledes v. State*, 323 Md. 456, 468, 593 A.2d 1117, 1123 (1991).

retrial following an appellate reversal or a declaration of a mistrial:

> "Both the trial after the appeal and the trial after the mistrial are, in a sense, a second prosecution for the same offense, but, in both situations, the policy behind the Double Jeopardy Clause does not require prohibition of the second trial."

432 U.S. at 152, 97 S.Ct. at 2217.

The case law from around the country is completely in line with this principle that a retrial on a greater, inclusive offense, following a declaration of mistrial because of a hung jury, is not barred by double jeopardy principles notwithstanding the fact that a guilty verdict was accepted and a sentence imposed with respect to a lesser, included offense. *Bell v. State,* 249 Ga. 644, 647, 292 S.E.2d 402 (1982) ("[W]here the State sought to prosecute a defendant on two offenses in a single prosecution, one of which is included in the other, and the defendant receives a mistrial on the greater offense, the remaining conviction of the lesser offense does not bar retrial of the greater offense."); *Hughes v. State,* 668 P.2d 842 (Alaska, 1983); *People v. Williams,* 240 Cal.Rptr. 717, 195 Cal.App.3d 398 (5 Dist.1987), *cert. denied,* 488 U.S. 832, 109 S.Ct. 89, 102 L.Ed.2d 65 (1988); *Commonwealth v. McCane,* 517 Pa. 489, 496–497, 539 A.2d 340 (1988) ("[E]ven if the traffic violations of which the defendant was found guilty are lesser included offenses of the vehicular homicide charge, double jeopardy considerations prohibit 'successive prosecutions' not a retrial following a mistrial precipitated by a deadlocked jury."); *Paul v. Henderson,* 698 F.2d 589 (2d Cir. 1983); *United States v. Bailin,* 1991 W.L. 126279 (N.D.Ill. 1991).

We also find instructive the recent decision of the Court of Appeals in *Apostoledes v. State,* 323 Md. 456, 593 A.2d 1117 (1991). The third of the necessary decisions the Court was called upon to make involved the possible application of *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), to a procedural posture indistinguishable from

the one at bar. In the original trial there, the defendant had been acquitted of conspiracy to commit murder, by the granting of her motion for acquittal based upon the insufficiency of the State's evidence. On a companion charge of murder, the jury was unable to reach a verdict and a mistrial was declared. The defendant there sought to bar the retrial on double jeopardy grounds. There, of course, the plea was one of former acquittal, whereas here it is one of former conviction. The thrust of the defendant's argument was that the State, to prove the murder on retrial, would of necessity have to prove a *mens rea* for which the defendant had already been in jeopardy and had been acquitted. Although conceding, *arguendo*, that the conspiracy and the murder were not the "same offense," the defendant argued that, under *Grady v. Corbin*, they nevertheless involved the same conduct.

The well considered opinion of Judge Chasanow found it unnecessary even to address the merits of *Grady v. Corbin*. As with other aspects of double jeopardy law, the *Grady v. Corbin* subvariety simply does not apply where several related charges originally embark upon simultaneous jeopardies but one then terminates even as another continues on. The double jeopardy bar applies only where the State in the first instance brings successive prosecutions on a sequential basis:

> "Nowhere in its opinion did the *Grady* Court suggest that the Double Jeopardy Clause protects against multiple trials *when one or more counts are left unresolved following an initial trial due to jury deadlock, the grant of a new trial, or reversal on appeal.*

Any doubt that the successive trial holding in *Grady* is ordinarily limited to instances where the State has failed to bring and join for trial all charges arising from a single episode is dispelled by the Court's concluding remarks:

> 'With adequate preparation and foresight, *the State could have prosecuted Corbin* for the offenses charged in the traffic tickets and the subsequent indict-

ment *in a single proceeding, thereby avoiding this double jeopardy question.'*

495 U.S. [at] 524, 110 S.Ct. at 2095, 109 L.Ed.2d at 566. In the instant case, the State did precisely what was urged in *Grady.* Therefore, *the double jeopardy question at issue in Grady has been avoided."* (emphasis supplied).

*Apostoledes,* 323 Md. at 468, 593 A.2d 1117. *See also Detrich v. United States,* 924 F.2d 479 (2d Cir.1991); *United States v. Guariglia,* 757 F.Supp. 259, 265 n. 1 (S.D.N.Y. 1991); *State v. Garner,* 90 Md.App. 392, 399–401, 601 A.2d 142 (1992).

As an across-the-board proposition, the double jeopardy bar simply does not intervene to terminate a continuing jeopardy once it has properly begun.

### Green v. United States and Price v. Georgia Distinguished

Whatever solace the appellant may seek in *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) and *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) is illusory. In the original trial in *Green v. United States,* the jury had the option of finding the defendant guilty of murder in either the first or second degree. It returned a verdict of second-degree murder. It was silent with respect to first-degree murder. The judge accepted the verdict and discharged the jury. The second-degree murder conviction was subsequently reversed and the case remanded for retrial. Upon retrial, the defendant was found guilty of murder in the first degree and sentenced to death. The Supreme Court held that a retrial on first-degree murder should have been barred by double jeopardy principles.

In *Price v. Georgia,* a jury found the defendant guilty of the lesser included crime of voluntary manslaughter. Its verdict made no reference to the greater charge of murder. The manslaughter conviction was overturned on appeal and the case remanded for a new trial. The defendant inter-

posed a double jeopardy plea to renewed exposure on the murder charge. The Supreme Court agreed that it was, indeed, barred by double jeopardy principles.

In neither of those cases, however, did the jury indicate that it was hung with respect to the greater charge. It simply remained silent. In neither case was a mistrial declared on the basis of a hung jury. In neither case did the Supreme Court treat the retrial for murder as a situation involving a retrial following a mistrial. In each case, the jury's return of a verdict of guilty on the lesser form of felonious homicide coupled with its silence on the greater was deemed by the Supreme Court to be an implied acquittal on the greater. *Price v. Georgia*, at 398 U.S. 328, 90 S.Ct. 1760, summed up the holding of *Green v. United States* as it prepared to apply it to its own factual situation:

> "[T]he Court considered the first jury's verdict of guilty on the second-degree murder charge to be an 'implicit acquittal' on the charge of first-degree murder."

Neither of the two cases, therefore, involved continuing jeopardy. Each was a case where the original jeopardy on the precise offense in issue had actually been terminated in the defendant's favor by a verdict of acquittal, a situation not before us here.

 \* \* \* \* \* \*

There is, therefore, no constitutional impediment to the appellant's retrial on the charge of possession of marijuana with intent to distribute.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.